Neil Pedersen, Esq. (SBN 139262)
npedersen@pedersenlaw.com
Kimberly H. Whang, Esq. (SBN 299368)
kwhang@pedersenlaw.com
PEDERSEN LAW, APC
17910 Skypark Circle, Suite 105
Irvine, California 92614
Phone: (949) 260-1181
Facsimile: (949) 260-1185

John C. McCarty, Esq. (SBN 134058)
johncmccartyattorneyatlaw@yahoo.com
JOHN C. McCARTY, A PROFESSIONAL LAW CORPORATION
McCARTY LEGAL
240&1/2 Main Street
Seal Beach, California 90740-6318
Telephone:  562.296.5067
Facsimile:   562.296.5118

Albert F. Ferolie (ARDC No. 6197037)
The Law Offices of Albert F. Ferolie, P.C.
218 N. Jefferson Street, Suite 401
Chicago, Illinois 60661
Phone: (312) 715-0255
Facsimile: (312) 648-9503

*Attorneys for Plaintiff*
ATEF A. ELZEFTAWY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| ATEF A. ELZEFTAWY, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>PERNIX GROUP INC., a Delaware Corporation; and DOES 1-100, inclusive,<br><br>    Defendants. | Case Number:<br><br>Judge:<br><br>Magistrate:<br><br>**Jury Trial Demanded**<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>  1.  VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA) 29 USC § 2601 ET SEQ.;<br><br>  2.  VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT ("ADA") |

42 U.S.C. 12101 ET SEQ.;

3. VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") 42 U.S.C. § 2000e ET SEQ.);

4. VIOLATION OF 42 U.S.C. § 1981 ("1981 CLAIM");

5. WHISTLEBLOWER PROTECTION UNDER THE FALSE CLAIMS ACT (31 U.S.C. § 3730(h));

6. VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT (GOVERNMENT CODE, SECTION 12945.1 ET SEQ.);

7. ILLEGAL REFUSAL AND FAILURE TO PROVIDE A TIMELY, GOOD FAITH INTERACTIVE PROCESS IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOVERNMENT CODE, SECTION 12940 ET SEQ.);

8. ILLEGAL REFUSAL AND FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOVERNMENT CODE, SECTION 12940 ET SEQ.);

9. ILLEGAL DISABILITY/PERCEIVED DISABILITY HARASSMENT, AND FAILING TO PROTECT FROM SUCH IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOVERNMENT CODE, SECTION 12940 ET SEQ.);

10. ILLEGAL DISABILITY/PERCEIVED DISABILITY/NATIONAL ORIGIN/ANCESTRY/COLOR/ ERACE/RELIGION DISCRIMINATION AND FAILING TO PROTECT FROM SUCH IN

VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOVERNMENT CODE, SECTION 12940 ET SEQ.);

11. ILLEGAL DISABILITY/PERCEIVED DISABILITY/NATIONAL ORIGIN/ANCESTRY/COLOR/ RACE/RELIGION RETALIATION AND FAILING TO PROTECT FROM SUCH IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOVERNMENT CODE, SECTION 12940 ET SEQ.);

12. WHISTLEBLOWER PROTECTION UNDER LABOR CODE, SECTIONS 6310 AND 6400;

13. WHISTLEBLOWER PROTECTION UNDER THE CALIFORNIA FALSE CLAIMS ACT (GOVERNMENT CODE, SECTION 12653(a));

14. WHISTLEBLOWER PROTECTION UNDER LABOR CODE, SECTION 1102.5;

15. WRONGFUL ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY;

16. FRAUD (FALSE PROMISE);

17. FRAUD (INTENTIONAL MISREPRESENTATION);

18. FRAUD (CONCEALMENT); AND

19. VIOLATION OF THE UNFAIR BUSINESS PRACTICES ACT (BUSINESS AND PROFESSIONS CODE, SECTION 17200 ET SEQ.).

**DEMAND FOR JURY TRIAL**

COMPLAINT - 3

Plaintiff ATEF A. ELZEFTAWY hereby alleges as follows:

**INTRODUCTION**

1.      Plaintiff ATEF A. ELZEFTAWY (sometimes "ATEF" and/or "Plaintiff") is a California resident and citizen who lives, and has lived, in California since approximately July 2015 and for years before his de facto wrongful discharge and refusal to hire/rehire by Defendants.  California is where the vast majority of the illegal acts and omissions occurred against ATEF.  California is where ATEF – along with his family - suffered the adverse effects of the illegal misconduct by Defendants.  Although California courts have minimum contacts with California upon which the claims are based (specific personal jurisdiction) against Defendant PERNIX GROUP, INC. (sometimes "PERNIX GROUP" and/or "Defendant" and/or as one of the "Defendants"), a favorable ruling concerning personal jurisdiction (or ruling concerning transfer instead of dismissal) was not guaranteed in California.  As such, Plaintiff ATEF brings this action in the Northern District of Illinois, Eastern District where personal general jurisdiction against Defendants exists without question.  Defendant PERNIX GROUP'S principal place of business is in Lombard, Illinois.

2.      Plaintiff ATEF brings this action for damages and equitable relief against his employer/former employer for violation of various federal and state laws designed to protect Plaintiff and other employees and applicants for employment from failure to provide a timely, good faith, interactive process, failure to provide a reasonable accommodation, harassment, discrimination, retaliation, wrongful discharge, failure to hire/rehire, and other illegal misconduct based upon disability, perceived disability, race, color, national origin, ancestry, religion, opposing and/or complaining about the foregoing and standing up for his rights and the rights of others, opposing and/or complaining about unsafe working conditions, opposing, investigating, and trying to stop false governmental claims, for fraud, unfair, illegal, and fraudulent business practices, and for the other illegal actions and/or omissions set forth herein.

**SUBJECT MATTER JURISDICTION**

3.      This court has subject matter jurisdiction, specifically diversity jurisdiction, over this matter pursuant 28 U.S.C. § 1332.  Complete diversity exists as Plaintiff is a resident

and citizen of California for years and Plaintiff is informed and believes, and thereon alleges, that each of the Defendants are citizens of states other than California. Defendant PERNIX GROUP represents itself to be a Delaware Corporation with its' principal place of business in Lombard, Illinois. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

4. This court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in light of federal questions arising under the following federal statutes sued upon:

    a. Family Medical Leave Act (sometimes "FMLA"), 29 USC § 2601 et seq.;

    b. Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. §§ 12101 et seq.;

    c. Title VII of the Civil Rights Act of 1964 (sometimes " Title VII"), 42 U.S.C. § 2000e et seq.;

    d. 42 U.S.C. § 1981 (sometimes "1981 action"); and

    e. The False Claims Act (sometimes " FCA"), 31 U.S.C. § 3729 et seq., specifically the anti-retaliation provision found at Section 3730.

## PERSONAL JURISDICTION

5. This court has general personal jurisdiction over Defendant PERNIX GROUP whose principal place of business is 151 East 22nd Street in the City of Lombard, County of DuPage, State of Illinois and from which most of the communications were sent to ATEF in California. This court and the California courts would have personal jurisdiction over Defendant PERNIX GROUP because it is an entity that has sufficient minimum contacts in Illinois and California, and purposely availed itself of the benefits and protections of California and Illinois so as to render the exercise of jurisdiction over Defendant PERNIX GROUP, INC. by the California and Illinois courts consistent with traditional notions of fair play and substantial justice.

## PARTIES AND VENUE

6. Plaintiff ATEF is and, at all relevant times was, a citizen and resident of the State of California, County of Orange.

7.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP is a Delaware Corporation with its company headquarters located at 151 E. 22nd Street Lombard, IL 6014.

8.     Plaintiff is informed and believes, and thereon alleges, that at the time of the wrongful conduct alleged herein, and continuing, that Defendant PERNIX GROUP employed approximately four hundred (400) employees (mostly in the United States) and around the world and continues to employ this approximate number of people when considering its' employees, its' subsidiaries' employees, and its' joint venture employees. As such, Defendant PERNIX GROUP maintains enough employees to constitute an "employer" as set forth in the federal laws sued under, including, but not limited to, the ADA (42 USC Section 12111(5) and 29 CFR Section 1630.2 requiring 15 employees); the FMLA (29 USC § 2611(4)(A)(i) requiring 50 or more employees); TITLE VII (Title VII of the Civil Rights Act of 1964 as amended, 42 USC 2000-e requiring 15 or more employees) and other federal laws. In addition, Defendant PERNIX GROUP maintains enough employees to constitute an "employer" as set forth in state law sued under, including, but not limited to, California Government Code, Section 12926(d) (requiring five or more employees) for liability under the California Fair Employment and Housing Act ("FEHA"), California Government Code, Section 12940 et seq., the special definition of "employer" found at California Government Code, Section 12940(j)(4)(A) for purposes of liability for harassment pursuant to California Government Code, Section 12940(j) (requiring one or more employees), the definition of "employer" for purposes of other liability under the FEHA and the CFRA/FMLA (requiring fifty or more employees).

9.     The true names and capacities, whether corporate, associate, individual, or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to California Code of Civil Procedure § 474.  Each of Defendants designated herein as a DOE is negligently or otherwise legally responsible in some manner for the events and happenings herein referred, and caused injuries and damages proximately thereby to Plaintiff as herein alleged.  Plaintiff will ask leave

of Court to amend this Complaint to show their true names and capacities when the same have been ascertained.

10.     The wrongful conduct of Defendants occurred and the causes of action arose, at least in part, in the County of Orange, State of California (where most of the illegal acts and omissions occurred, were directed to - through mail, email, and conversations with ATEF - and/or the adverse effects were suffered by ATEF) and in Lombard, Illinois (where some of the communications were sent from in the Northern District-Eastern Division).  Venue is proper in California in the Central District pursuant to 28 U.S.C. § 1391(b)(2) because it is "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...."  Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391(b)(1) and (3) because it is "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and because "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  In spite of other jurisdictions also being the appropriate venue (such as California), the courts with the Seventh Circuit (including those within the Northern District of Illinois, Eastern Division) are an appropriate venue.  Under 28 U.S. Code § 1404, this court "for the convenience of parties and witnesses," and "in the interest of justice," "may transfer" this "civil action to any other district or division where it might have been brought [including the Central District of California] or to any district or division to which all parties have consented."

## JOINT LIABILITY

11.     Unless otherwise indicated herein, each Defendant herein sued is the agent, co-conspirator, joint venturer, general employer, special employer, dual employer, partner, aider, abettor, inciter, compeller, coercer, and/or employee of every other Defendant and, as alleged, has been acting within the course and scope of said agency, conspiracy, joint venture, dual employment, joint employment, partnership, employment, and/or other role described with the knowledge and/or consent of co-Defendants, and each of them.  Moreover, Plaintiff is informed and believes and thereon alleges that each Defendant has authorized and/or ratified

the wrongful activities of each of the remaining Defendants. As such, Defendants are jointly liable based on *Delos v. Farmers Insurance Group* (1979) 93 Cal.App.3d 642, and/or any similar joint liability theories and/or case decisions.

## CORPORATE LIABILITY FOR PUNITIVE DAMAGES

12. Defendants' conduct, as described herein, was malicious, fraudulent, oppressive, mean, vile, despicable, and in conscious disregard of Plaintiff's rights and was undertaken, aided, abetted, incited, coerced, compelled, ratified, and/or otherwise participated in and/or pursuant to policies and procedures adopted, approved and/or allowed by their officers, directors, and/or managing agents (as those terms are used in California Civil Code Sections 3294 and 3295) for purposes of establishing corporate liability for punitive damages of each of the Defendants, including, but not limited to, NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and others. Further, Defendants had advance knowledge of the malicious, fraudulent, and/or oppressive activities of the individual perpetrators whose actions and conduct were authorized, approved, and/or ratified (by continued retention and refusal to discipline and/or discharge long after the illegal misconduct was known) by Defendant PERNIX GROUP's directors, officers, and/or managing agents.

## DEFENDANTS' LIABILITY FOR TREBLE PUNITIVE DAMAGES

13. Plaintiff is informed and believes, and thereon alleges, that one or more of the following factors have been met thereby establishing the liability of Defendant PERNIX GROUP, and DOES 1-100, and each of them, for treble punitive damages pursuant to California Civil Code Section 3345:

   a. Defendants, and each of them, "knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons [including ATEF];"

   b. Defendants, and each of them, "caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence,

principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person [including ATEF];" and/or

c. Plaintiff ATEF and other victims of the fraudulent conduct were "senior citizens or disabled persons" who were "substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct."

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. Case Summary

14.     Plaintiff ATEF  is a "disabled" (or at least "perceived" or "regarded" to be "disabled"), Egyptian-American, Muslim. As set forth below, ATEF worked for Defendant PERNIX GROUP since 2012.  On June 10, 2016, Defendant PERNIX GROUP announced that CANDACE WATSON (Human Resource Director for Defendant PERNIX GROUP's subsidiary BE&K Building Group) was now also "HR Director for Pernix Group Inc., reporting to NIDAL ZAYED (President & CEO) with direct responsibility for HR functions company wide."

15.     In a letter dated September 1, 2016, Defendant PERNIX GROUP confirmed that Plaintiff's employer continued to be Defendant PERNIX GROUP (the parent corporation of various PERNIX entities), that ATEF would continue working with CEO/President ZAYED, and that he would be directly reporting to ED McSWEENEY (President of PERNIX FEDERAL, a division of Defendant PERNIX GROUP).  After years of ATEF's "award winning" service (including an award from the U.S. Government to ATEF regarding best Design and Efficiency) and ATEF bringing in over a hundred million dollars in business to

PERNIX GROUP from federal government contracts, Plaintiff ATEF had recently been promoted by CEO/President ZAYED to Senior Director of Engineering and Special Projects. Unfortunately, while working under President ED McSWEENEY in 2016, Plaintiff ATEF would learn about, complain about, and oppose ED McSWEENEY's racists comments (calling out Mr. McSWEENEY for his "racist" comments in the summer of 2016) about Muslims and Middle-Easterners (whom he seemingly lumped in with "terrorists"). Plaintiff ATEF also opposed the decision (told to ATEF in the summer 2016) by NIDAL ZAYED (a Middle-Eastern person who held himself out as Christian) and ED McSWEENEY to lower the number of Muslims working for Defendant PERNIX GROUP (by firing and hiring policies) for the stated reason that PERNIX GROUP would be more competitive in bidding for US governmental projects. During the same time period – middle to late 2016 - ATEF complained about safety issues to Defendant PERNIX GROUP, including up to the day of his injury (which was caused by such unsafe work conditions) on November 11, 2016. As a result of his injury, Plaintiff ATEF suffered a disability (a "substantial limitation" on his ability to walk - a "major life activity" under the ADA and also qualifying as a disability under FEHA which includes "any limitations" on a "major life activity") and a "serious health condition" (qualifying ATEF under the FMLA/CFRA). In December 2016, Defendant PERNIX GROUP's top HR person, CANDACE WATSON (along with other PERNIX GROUP agents), admitted that Plaintiff ATEF was entitled to an FMLA leave (up to 12 weeks a year), which in turn required no interference with such a leave, a return to his same or a similar position after the leave was done, and no harassment, discrimination, and/or retaliation for requesting and/or taking the leave. In addition, under the ADA and FEHA, Plaintiff ATEF would be entitled to a much longer leave than 12 weeks, if needed. Furthermore, under these and other laws, ATEF would be entitled to a timely, good faith, interactive process, a continuing and reasonable accommodation, and protection from harassment, discrimination, and retaliation based upon his disability, religion, national origin, ancestry, race, color and/or standing up for his rights under the law. Plaintiff ATEF had personally been involved in negotiations with the federal government on numerous occasions. He had brought in over 200 million dollars of projects,

and knew that Defendant PERNIX GROUP, by the illegal acts and omissions set forth herein, were falsely certifying – over and over again as set forth below – that it had followed, was following, and would continue to follow anti-discrimination laws (protecting Middle-Easterners, Muslims, and disabled people from discrimination), falsely certifying that it would periodically assess such to insure compliance with such laws, and falsely certifying compliance with other laws that they were breaking from the very top of Defendant PERNIX GROUP – the same people who were falsely certifying compliance.

**B. Defendant PERNIX GROUP'S False Certifications, False Representations and False Claims to the U.S. Federal Government to Gain Hundreds of Millions of Dollars in Federal Contracts Provides the Context**

16. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP (and its various subsidiaries and joint ventures) were awarded approximately 190 prime federal contracts (and many other sub-contracts) for a total of over 700 Million Dollars in the last eight years or so, based on falsely certified past, then-present, and future compliance with safety laws, anti-discrimination laws, and promises of periodic investigations and assessments to insure compliance with such laws. Plaintiff is informed and believes, and thereon alleges, that these false certifications were agreed to and falsely made to the federal government (predominantly the Department of Defense and the Department of State) by CEO/President ZAYED and the President McSWEENEY and others before, during, and after their illegal mistreatment of ATEF and others similarly situated, including, but not limited to, tens of times for each year from 2012 through the present and approximately 190 times. Plaintiff ATEF knew about these false certifications, false representations, and false promises from his vantage point as part of the top management team who directly reported to ED McSWEENEY and NIDAL ZAYED and his personal participation in the negotiations of such contracts, especially those he helped Defendant PERNIX GROUP win as described below. This is not a case where a rogue lower-level employee harasses, discriminates against, and retaliates against another employee, but rather is a case where the same people at the top of Defendant PERNIX GROUP who are making the false certifications, false representations, and

false promises, are knowingly lying and then personally carrying out the illegal misconduct they certified that PERNIX GROUP did not do. Plaintiff ATEF does not sue in this case for the hundreds of millions of dollars obtained by Defendants based upon false certifications, false representations, false promises, and fraudulent concealment as such case would be filed separately under seal under the procedural requirements set forth in the United States False Claims Act and, where appropriate, under state False Claims Acts. Plaintiff ATEF sues – in part – based upon Defendants PERNIX GROUP's retaliation against him when he opposed, investigated, and tried to stop the illegal conduct, practices and policies and false claims. Plaintiff is not required to say whether or not he has actually filed a government recoupment qui tam action as such would be required to be under seal with the government given a chance to investigate and/or intervene. For purposes of the retaliation claim under the False Claims Act, it is enough that Plaintiff was trying to investigate such and/or oppose such and/or stop such and was retaliated against because of such. This is true whether he brings an actual governmental recoupment qui tam case or not.

### C. ATEF'S Complaints about Safety Issues and His Disabling Injury

17.    In the summer and fall of 2016, Plaintiff, Gary O'Neal (Site Safety & Health Officer), and others complained about safety issues to CEO/President ZAYED, President McSWEENEY, and others, including by relevant example, the leaving of parts of the construction flooring off without adequate (or in some cases any) warning of danger. Site Safety & Health Officer O'Neal, within weeks of ATEF getting hurt, threatened to quit his job if the safety issues were not fixed indicating in pertinent part: "The guys are shaken by this and have voiced they're [sic] concerns about the path forward! I will not be a part of just forgetting that no one was injured majorly! If anyone has a problem with this, Then I am willing to step down as the SSHO? I will not stand by and watch this behavior happen! If PERNIX or KASEMAN wants me replaced I do not have a problem with that! I will not stand ideally by and watch or let unsafe behavior happen on this project!" The injured employee went to the hospital, had a few sutures placed and – under pressure from Defendant PERNIX GROUP - went back to work right away so as to not have a "reportable" incident and not raise the specter

of Defendant PERNIX GROUP having to provide a timely, good faith, interactive process and reasonable accommodation (including an FMLA leave and longer leave, if necessary, under the ADA, FEHA, and other laws) and PERNIX GROUP having to refrain from harassing, discriminating against, and/or retaliating against a disabled employee.

18.     Unfortunately, on November 11, 2016, Plaintiff ATEF was hurt "majorly" (to quote Mr. O'Neal's prophetic email) by the same safety issues ATEF, Mr. O'Neal and others had complained about.  While making his morning rounds after a Safety Meeting, Plaintiff stepped his left foot into an unprotected and open raised steel floor tiles (depth of 24 inches) full of electrical conduits. Unfortunately, ATEF's injury was far worse than the last person to get hurt because of the safety issues raised by ATEF.  ATEF sustained a broken fibula, chipped ankle joint and shattered heel bone requiring multiple surgeries.  In addition, ATEF suffered a more minor right-hand injury.  Moreover, ATEF suffered back pain after the fall.

19.     Plaintiff ATEF filed an Employer's First Report of Occupation Injury from California.  Plaintiff proceeded with medical care (again, including multiple surgeries) at various health care providers in California.  ATEF was totally disabled from November 11, 2016 to January 2017 when his California health care providers released ATEF.  ATEF was entitled to leave under the CFRA and FMLA, as his leave was less than 12 weeks and the result of a "serious health condition."

**D.  Defendant PERNIX GROUP'S Promise to Return ATEF to the Same or Similar Job**

20.     In December 2016, HR Director WATSON and TANDEM HR (a "Professional Employer Group" also representing Defendant PERNIX GROUP) correctly informed ATEF that his "serious health condition" entitled him to FMLA leave of up to 12 weeks, and that he was guaranteed return to his job or a similar one.  HR Director WATSON's admission and TANDEM HR's admission in December 2016 of at least some of ATEF's legal rights were contrary to PERNIX GROUP's written policies (that has continuously existed since 2008), which indicated that FMLA was "inapplicable" to PERNIX GROUP and its employees, that the longest leave allowed was 8 weeks, and otherwise misstated the contours of the FMLA (see

below). In addition, though he was not told of this right, ATEF was also entitled to a timely, good faith, interactive process and reasonable accommodation, including, if necessary, a leave of up to one year or more, and also to a position which accommodated ATEF's new found disability caused by Defendant's unsafe practices that ATEF had complained about.

21. Defendant PERNIX GROUP, by the FMLA forms provided to ATEF and filled out by ATEF and TANDEM HR in December 2016, learned about the nature and extent of ATEF's job duties (at least as to his job duties at the time of the injury) and knew that ATEF had a "desk" job in various types of engineering for decades, including Design Engineering, Project Control, Logistics, Purchasing, and many other "desk jobs." ATEF used sick days and vacation days to continue getting paid through December 2016.

**E. When ATEF sought to "Return to Work," Defendant PERNIX GROUP, CEO/President ZAYED, President McSWEENEY, HR Director WATSON, and Others Knew ATEF's Rights Under Federal and State Law**

22. In January 2017, ATEF was cleared to return to office duty by his doctor and he provided his employer with a doctor's note indicating such. Plaintiff ATEF's work restrictions initially included an indication that he needed a "desk job" and restrictions on "travel." Soon, however, ATEF was given clearance to "travel" as part of his job. ATEF had worked many such positions over his decades of experience and Defendant PERNIX GROUP could accommodate such in one of their many offices around the United States and/or projects around the world, including tens of millions of dollars of projects won by ATEF for Defendant PERNIX GROUP in the past.

20. On or about January 5, 2017, ATEF emailed his director supervisors CEO/President ZAYED and President McSWEENEY regarding his desired "return to work." Plaintiff is informed and believes, and thereon alleges, that as of January 5, 2017, and thereafter, when Plaintiff ATEF informed them of his ability to go back to work with restrictions and continued to seek return to work, Defendant PERNIX GROUP (including CEO/President ZAYED, President McSWEENEY, HR Director WATSON, other HR

employees and/or HR TANDEM) knew that ATEF – as a disabled employee who was returning from FMLA/CFRA leave - was entitled the following:

a. ATEF had a right (and had been previously entitled) to proper postings and notification regarding his rights under the FMLA/CFRA, including postings/notifications regarding his rights under such a leave (see below), the status of his leave, whether the company deemed him a "key" person, and his job or another similar position after his leave ended;

b. ATEF had a right to a 12-week leave under the FMLA/CFRA without any interference with such leave;

c. ATEF had a right to be returned to his same or similar position after returning from such FMLA/CFRA leave;

d. ATEF had a right to be free from harassment, discrimination, and/or retaliation due to his requesting and/or taking FMLA/CFRA leave;

e. ATEF had a right to a timely, good faith, interactive process from Defendants to find a reasonable accommodation for his disability;

f. ATEF had a right to a reasonable accommodation (and continuing) of his disability, which included not only a medical leave under CFRA/FMLA (limited in time to 12 weeks per year), but also a much longer medical leave under FEHA and the ADA – even exceeding a year, if necessary;

g. ATEF had a right to be free from harassment, discrimination, and/or retaliation by Defendants due to his seeking a timely, good faith, interactive process, seeking a reasonable accommodation (continuing), and due to his standing up for his right not to be harassed, discriminated against, and/or retaliated against due to his disability;

h. ATEF had a right under state law to be free from harassment, discrimination, and/or retaliation by Defendants because of his complaints regarding safety issues;

i. ATEF had a right under federal and state law to be free from harassment, discrimination, and/or retaliation by Defendants due to his national origin, ancestry, color, and/or race (ATEF is Egyptian-American), and/or his religion (ATEF is Muslim); and

j. ATEF had a right under federal and state law to be free from harassment, discrimination, and/or retaliation by Defendants due to his investigation of his bosses' fraud on the government, his efforts to stop what he in good faith believed to be fraudulent certifications, false representations and false claims by Defendants to gain hundreds of millions of dollars in federal governmental contracts.

**F. Defendant PERNIX GROUP, CEO/President ZAYED, President McSWEENEY, HR Director WATSON, and Others Consciously Disregarded ATEF's Rights Under Federal and State Law in a Malicious, Fraudulent, and Oppressive Way**

21. Defendant PERNIX GROUP, INC. consciously and oppressively disregarded Plaintiff ATEF's rights under federal and state law and willfully injured ATEF by numerous illegal actions, omissions, and refusals by Defendant PERNIX's officers, directors, and/or managing agents and/or pursuant to fraudulent, illegal, and unfair policies, procedures and actions authored, implemented, and/or ratified by them including, but not limited to, the following:

a. Defendant PERNIX GROUP's written policies and written representations to ATEF, and hundreds of other employees, did not provide proper and adequate postings of ATEF's rights and the rights of other employees to FMLA (or the CFRA or any other state or local Family Medical Leave Acts) and instead deceived ATEF and others regarding such by stating in its written policies the following:

i. Defendant PERNIX GROUP's Employee Handbook (dated 2008 and which has not been updated or such update has not been provided to ATEF) does not address the employees' rights under the Family Medical

Leave Act nor any of the state counterparts such as the California Family Rights Act;

ii. Defendant PERNIX GROUP's Supplemental Employee Handbook dated April 25, 2008 (at Page 9 and as referenced in the Table of Contents as "**Family Medical Leave**") states:

1. "At this time, the Family Medical Leave Act is not applicable to Pernix Group, Inc. However, we understand our employees' needs, so please refer to the Disability Leave Section for additional information."

iii. After deceiving ATEF and other employees about FMLA not being applicable to Defendant PERNIX GROUP, Defendant PERNIX GROUP's Supplemental Employee Handbook (dated April 25, 2008 and which has not been updated or such update has not been provided to ATEF) further deceives ATEF and other employees into believing that a "Disability Leave" is limited to 8 weeks: "Exempt and non-exempt employees are eligible for unpaid disability leave after one year of employment. Disability leave due to non-occupational illness, injury or pregnancy-related disability is not to exceed eight (8) weeks."

iv. PERNIX GROUP's written policy is illegal and fraudulent as FMLA and CFRA leaves are allowed for up to twelve (12) weeks under the law and, more importantly, leaves under the ADA and FEHA have been allowed for up to and over one year.

v. In addition to indicating the wrong time limit for leaves, Defendant PERNIX GROUP's Supplemental Employee Handbook (dated April 25, 2008 which has not been updated or such update has not been provided to ATEF) indicates the wrong standard for returning the disabled employee to work: "We will return you to the same or similar position you held prior to your disability leave [the foregoing being somewhat

similar to the FMLA standard which they say does not apply], *subject to our staffing needs and business requirements* [emphasis added on the portion of the standard which misrepresents the legal standard];

vi.   PERNIX GROUP's written policies in this regard are illegal, fraudulent, and clearly show that its many certifications to the federal government regarding following anti-discrimination laws are false and its many certifications of periodic assessments to insure it is following anti-discrimination laws (and other laws) are also false;

vii.  Defendant PERNIX GROUP's Employee Handbook (dated May 28, 2008 which has not been updated or such update has not been provided to ATEF) is introduced by Mr. NIDAL ZAYED (Chief Executive Officer and President of Defendant PERNIX GROUP) and makes many promises about providing a safe work environment and about protecting employees from harassment, discrimination, and retaliation, but the statements do not cover the all of the various rights of each employee leaving them without knowledge of their actual rights and, more importantly NIDAL ZAYED, and EDWARD McSWEENEY themselves violate such anti-discrimination laws and author, implement, and/or ratify illegal, fraudulent and unfair conduct and policies.

viii. Defendant PERNIX GROUP'S Employee Handbook does have a section on "Employees With Disabilities," but does not state the employees' rights to a timely, good faith, interactive process and states the wrong standard as to when and under what circumstances a reasonable accommodation is legally required for a disabled employee.

b.   In spite of Defendant PERNIX GROUP's stated policy that the FMLA is not applicable to it, TANDEM HR (with a copy to CANDACE WATSON, the Director of Human Resources for Defendant PERNIX GROUP and its subsidiary BE&K) sent ATEF emails and paperwork regarding ATEF's FMLA

rights. CANDACE WATSON (the top HR person at both Defendant PERNIX GROUP and BE&K – PERNIX-GROUP'S subsidiary with many jobs all around the United States) admitted in an email that ATEF was entitled to FMLA. Unfortunately, Defendant PERNIX GROUP and TANDEM HR did not follow up to provide ATEF with the same or similar position and, in essence, withdrew CANDACE WATSON'S and TANDEM HR's apparent offer to follow the FMLA. It is unclear who was the one to put a stop to Defendant PERNIX GROUP following the law, but as set forth below, the only people above ATEF on the chain of command (PERNIX FEDERAL President McSWEENEY and PERNIX GROUP President ZAYED) both had illegal motives. Defendant PERNIX GROUP interfered with ATEF's FMLA/CFRA leave and Disability Leave and harassed, discriminated against, retaliated against, and, ultimately, wrongfully discharged (de facto) ATEF and refused to hire/rehire him;

c. While ATEF was on FMLA/CFRA leave and on leave under the ADA/FEHA (which would allow for a much longer leave if needed), Defendant PERNIX GROUP sought ATEF'S assistance with work. Although ATEF initially patiently responded to the interference of his leave with kindness and assistance, Defendant PERNIX GROUP (through HR Director CANDACE WATSON) added insult to injury by lambasting ATEF as if ATEF was the one doing something illegal for responding to the needs of the company who wanted his assistance with a few issues.

d. Although the ADA, FEHA and other laws require Defendants to enter into a timely, good faith, interactive process, Defendant PERNIX GROUP (through President McSWEENEY) tried to shut down, from the beginning, ATEF's right to a timely, good faith, interactive process, right to a reasonable accommodation, right to be returned to his same or similar job, and right to be free from harassment, discrimination, and/or retaliation. President McSWEENEY, on the same day of ATEF'S email about "Reporting Back to

Work" on January 5, 2017, refused to open an interactive process (and certainly not a "good faith" one) and seemed to want to stop any such process or any reasonable accommodation of ATEF's disability. President McSWEENEY's email went to ATEF, Tom Pymill (an officer of the company), and CEO/President ZAYED: "Need to have discussion on a plan of action. Can't leave him in suspense and need to make a decision either way." Although ATEF would push for his legal rights over the next year or so, President McSWEENEY's response the very first day would later show (in retrospect) that Defendant PERNIX GROUP had made up its mind (at least President McSWEENEY did) that ATEF would never be provided with a timely, good faith, interactive process, never be provided with a reasonable accommodation, never be provided with his job or a similar job as required by the FMLA, CFRA, ADA, and FEHA, and instead, would be led on by President ZAYED, HR DIRECTOR CANDACE WATSON, and others who acted like they wanted to follow the law and bring ATEF back. To this day, however, Defendants have not officially indicated that ATEF was ever discharged and has not officially indicated that Defendants have stopped looking for a position for ATEF. In addition, ATEF has not been offered any positions or received any help regarding finding such. In fact, Defendant PERNIX GROUP (predominantly by CEO/President ZAYED, President McSWEENEY, and HR Director WATSON) have, as set forth below, lied over and over again and acted in bad faith.

e.  As there were no reasons why Defendants should not have followed the law and bring him back (except illegal reasons), ATEF additionally believes that it was related to his race, color, national origin, ancestry, and/or religion. After all, President McSWEENEY had made obscene and derogatory remarks about Turkish people, Middle-Easterners, Muslims and others (who he seemed to lump in with terrorists). ATEF showed his opposition to such racist comments by the tone of his conversation, his body language, his changing of the subject

and in other ways. In addition, and perhaps more importantly, at some point approximately five to six months (in or about June or July 2016) before the illegal campaign started by President's January 5, 2017 email, ATEF remembers openly and forcefully chiding President McSWEENEY about his discriminatory comments, saying words to the effect that President McSWEENEY was making offensive and "racist" comments.    When ATEF would conduct his Friday prayers pursuant to his Muslim religion, ATEF felt compelled to leave the office so that no one at PERNIX GROUP would see him.  When ATEF spoke in front of groups of many white management and subordinates at Defendant PERNIX GROUP, he would sometimes feel the anger and animus in the room. In front of ATEF, PERNIX FEDERAL President McSWEENEY (believed to be a Christian/Catholic) told ATEF (an Egyptian-American and Muslim) and President ZAYED (who though from the Middle-East openly represented himself to be a Christian, celebrated Christmas, identified himself as Christian in the United Emirates and had a sister in-law who passed and was eulogized in a Christian Church) that they should get rid of Muslim employees and certainly not hire them.  President ZAYED had certainly been openly Westernized by a drinking habit that he openly embraced and displayed.  President McSWEENEY indicated that Defendant PERNIX GROUP would somehow  be more competitive in the bidding process for the United States Federal Government if they did not have Muslim employees (apparently given the present political environment.  Although President McSWEENEY and President ZAYED knew that ATEF was an Egyptian-American Muslim, and ATEF showed his opposition to such, they not only openly talked about such, but steered PERNIX GROUP in that direction with less and less Muslims being employed based upon illegal policies and practices.  ED McSWEENEY, an engineer who had been elevated to President of PERNIX FEDERAL, and others were changing the

culture of PERNIX GROUP from a company that had some diversity to a company which excluded Muslims, Middle-Easterners, and the Disabled.

f.  In light of his comments, it was not surprising that President McSWEENEY wanted ATEF gone and – along with CEO/President ZAYED and HR Director WATSON – knowingly pursued a campaign of lies and illegal conduct to get rid of ATEF.  ATEF was not a Caucasian Christian or a Christian at all.  With ATEF'S injury, PERNIX FEDERAL President McSWEENEY now had an opportunity, though illegal, to get rid of ATEF who had made it up the company ladder in spite of being an Egyptian-American Muslim by bringing in Tens of Millions of Dollars of Projects and by Award Winning Engineering work that Defendant PERNIX GROUP cited for years to come when trying to win additional US Governmental Projects.  Mr. McSWEENEY could – as he did – lie and say in January 2017 (and echoed thereafter by CEO/President NADAL and HR Director WATSON) that there were no positions available for ATEF and try to force ATEF out before ATEF learned of the various positions that were available or becoming available.  In addition to his openly stated desire that he wanted to get rid of Muslims, Mr. McSWEENEY also showed anger at disabled employees who got hurt on the job or otherwise, especially those who were hurt enough to become "disabled" and/or have a "serious health" condition (which would cause Defendant PERNIX GROUP to comply with the FMLA/CFRA and the ADA/FEHA.

g.  In addition, CEO/President ZAYED sent an email to ATEF in February 2017 indicating that – in spite of Mr. McSweeney hastily trying to fire ATEF in January – the following: "I have talked to Ed [referring to President MCSWEENEY] and considered a place for you on Maputo.  The feeling is we don't have a spot for you there at present."  President McSWEENEY was one of the main driving forces stopping ATEF from being given a timely, good faith

process, from being accommodated, penultimately wrongfully discharging ATEF (de facto), and ultimately making sure that ATEF was not hired/rehired.

h. ATEF thought that since he was standing up for safety and health for the benefit of PERNIX GROUP, he would be rewarded, but instead he had been put into a no-man's land. ATEF had seen others (those who are Caucasian, non-minorities, apparently non-Muslims) who had suffered work-related disabilities and were apparently provided a timely, good faith, interactive process, apparently provided a reasonable accommodation, apparently not harassed, discriminated against, and/ retaliated against, not wrongfully discharged and not otherwise illegally mistreated. As such, although ATEF believed he was illegally mistreated because of his disability/perceived disability, he is also informed and believes, and thereon alleges, that because of the comments made by President McSWEENEY (and others), changing culture, changing hiring/retention practices (by CEO/President ZAYED, President McSWEENEY, HR Director WATSON, and others) away from diversity, the apparent marginalizing/overruling/discharge of other minorities in high positions at these companies (including those who are apparently Muslims and those of Middle-Eastern heritage, ancestry, and/or national origin like myself), and other facts that the illegal acts against ATEF, may also be because of his national origin, ancestry, color, race, and religion.

i. ATEF indicated to Defendant PERNIX GROUP in January 2017 and February 2017, and during the course of the ensuing time since then, that he was willing to move or travel anywhere in the world for his work (as he previously had done for PERNIX GROUP). ATEF even researched and found an apartment across the street from Defendant PERNIX GROUP's home office. CEO/President ZAYED put ATEF on the speaker phone with President McSWEENEY in the room without telling ATEF which (along with the other facts set forth herein) gave ATEF an uneasy feeling about their collaboration in the illegal actions and

omissions against him. Plaintiff ATEF reminded Defendant PERNIX GROUP of his vast employment experience and expertise that had elevated him within the company prior to ATEF's disability and requests for accommodation. PERNIX CEO/President ZAYED and Human Resources Director WATSON acted like they were trying to find ATEF a position while President McSWEENEY made it clear he wanted ATEF gone. President McSWEENEY continued with a cold shoulder and stone-walled ATEF – never offering to help ATEF find a job to accommodate ATEF's disability and never finding any such job. In spite of CEO/President ZAYED's and HR Director WATSON's promises to the contrary, no one from Defendant PERNIX GROUP ever actually offered ATEF a position.

j. ATEF, hoping that PERNIX GROUP would fulfill their promises and follow their obligations under the law, continued to notify Defendant PERNIX GROUP of updates related to his disability and continued to ask for a position to return to, even pointing out a few positions that ATEF had found on his own that were open, even though Defendants continued to represent and act as if there were no open positions. As time passed by, Plaintiff ATEF questioned whether CEO/President ZAYED and Human Resources Director CANDACE WATSON were acting in "good faith" or lying when they indicated that they were trying to find ATEF a position to accommodate his disability and that there were no openings. Plaintiff is informed and believes, and thereon alleges, that an investigation has later shown that Defendant PERNIX GROUP (multiple officers, directors, and managing agents) were lying and that there were many positions given to non-disabled, non-Muslim, and/or Caucasians during the period of time from January 2017 to the present without ATEF ever being offered any of them in spite of the law requiring such and in spite of their knowledge that they were putting ATEF and his family into a dire situation.

k. The officers, directors, and managing agents at the very top of Defendant PERNIX GROUP vacillated between saying that they were going to find ATEF a position and indicating that they might give up, though McSWEENEY soon gave up the act that he wanted to help. As time when by, Defendant PERNIX GROUP contradicted itself and then lied and said that ATEF was going to be a part of a "reduction in force." When ATEF pointed out that no one else was part of such, Defendant PERNIX GROUP – having been caught in their deception - appeared to back off. In fact, Defendant PERNIX GROUP indicated it would wait to determine things until ATEF's leave was "final." It is important to note that Plaintiff was entitled to disability leave up to and longer than one year under the ADA/FEHA and Defendant PERNIX GROUP's continuing harassment, discrimination, retaliation, and attempts to get rid of Plaintiff ATEF were clearly illegal (certainly as to HR Director WATSON and TANDEM – along with CEO/President ZAYED and President McSWEENEY who had decades of experience regarding these types of matters) since it was far less than a year after ATEF's disabling injury caused by Defendant PERNIX GROUP's illegal acts and omissions. As such, Plaintiff ATEF continued to provide Defendants with updates regarding his work restrictions and sent various resumes in hopes that Defendants would follow the law and find him a position. Defendant PERNIX GROUP, however, never asked for ATEF's updated resume and did not do anything that followed their empty rhetoric regarding wanting to help him find a position to come back to. Defendant PERNIX GROUP appeared to try to "starve" ATEF out by not accommodating him (so he would not receive his $200,000 salary) and so that ATEF would have to quit – which he did not. As ATEF asked for positions on his own, he would receive positive remarks from those he contacted only to not receive an interview or job offer – President McSWEENEY, President ZAYED and Human Resources Director (who had the final say) would put a stop to it behind the scene. At one point, Defendant

PERNIX GROUP asked ATEF to sign a Consulting Agreement with the promise in May 2017 that they would continue to look to find ATEF a position to bring him back and would continue to process his security clearance while doing so. CEO/President ZAYED, however, overruled the idea (from TANDEM HR) indicating that though ATEF was willing to sign it that he – ZAYED – was not willing to sign it because ATEF was still with the company – just on medical leave.

l. Defendant PERNIX GROUP continued to imply that ATEF was still with the company, but just on medical leave. In July 2017, ATEF was informed that Defendants were still paying the "employer" portion of his healthcare coverage. On September 30, 2017, President ZAYED's brother (who was in top management as Director of Corporate and Marketing Services) informed ATEF by email of an open position at Defendant PERNIX GROUP. This email made ATEF optimistic that Defendant PERNIX GROUP was actually looking for positions for him and would finally follow the law and return him to work. After ATEF expressed interest in a reply email, no one ever got back to ATEF regarding the position. PERNIX Group's deceptive and cruel game continued.

m. At the end of October 2017, Defendants – still without saying that they were discharging ATEF – asked to have an exit interview with ATEF – asking him to sign "Exit Briefing Acknowledgement" - which is ordinarily (as set forth in Defendant PERNIX GROUP's written policies) something done when an employee is being discharged. To this day, however, ATEF has not be informed that he was actually and officially discharged, but after the September 30, 2017 communication from Defendant PERNIX GROUP raising a particular job that ATEF might finally be offered, ATEF had not received much, if any, new signs that Defendant PERNIX would follow finally through. ATEF has participated in and was otherwise aware as a manager within Defendant PERNIX GROUP of the discharge process concerning PERNIX GROUP employees and an official

"termination letter" was almost always - certainly normally - sent. ATEF never received one. Defendant PERNIX GROUP's exit interview at the end of October 2017 seemed to be the death knell to any hope that Defendant PERNIX GROUP would do the right thing and follow the law. As time passed into November and December, it looked clearer that ATEF had been deceived by the continuing lies and vacillations by those at the top of Defendant PERNIX GROUP who led ATEF down the proverbial Primrose Path in conscious disregard for ATEF's rights and with devastating effects that led ATEF to the deepest despair and hurt his family immensely.

n. Plaintiff ATEF was never given a timely, good faith, interactive process, was never given a reasonable accommodation, and was instead harassed, discriminated against, retaliated against, wrongfully discharged (de facto) and refused hire/rehire) by those at the top of Defendant PERNIX GROUP – officers, directors, and managing agents. Plaintiff is informed and believes, and thereon alleges, that many times during 2016 and 2017, while lying to ATEF about following the law, Defendant PERNIX GROUP (specifically CEO/President ZAYED and/or President McSWEENEY) continued to lie to and make false certifications, misrepresentations, false promises, and fraudulent concealment to the US Government (and perhaps state and local governments) with each new federal contract obtained and with hundreds of millions of dollars coming in based upon those lies, including, but not limited to, false claims on federal contracts on or about the following dates: times in December 2016 (when ATEF was being promised with the benefits of FMLA); January 9, 2017, January 19, 2017, January 23, 2017, January 26, 2017, February 24, 2017, March 13, 2017, March 17, 2017, March 29, 2017, May 4, 2017, June 5, 2017, July 7, 2017, July 3, 2017, July 20, 2017, July 23, 2017, August 23 2017, September 11, 2017, September 13, 2017, September 26, 2017, September 27, 2017, September 29, 2017, and October 2017, and November 9, 2017 with these

false claims only being a small fraction of the whole. Each time CEO/President ZAYED and/or President McSWEENEY made the numerous express false claims on each date of each new contract or each new claim for money (approximately 700 million over the last 8 years or so), their comments and actions harassing, discriminating against, and retaliating against the disabled, Muslims, and others of other protected categories and specifically their illegal actions against ATEF creeped into their minds as uninvited guests of guilty consciousness as they lied to bring in hundreds of millions. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX used written bragging and promises concerning ATEF's award (for Engineering from the US Government) and ATEF's experience and good work over the years for Defendant PERNIX which was used to procure each new federal contract.

o. Plaintiff is informed and believes, and thereon alleges – based upon information recently received - that there were many positions at Defendant PERNIX GROUP for which he was qualified for and for which his restrictions could be accommodated. Plaintiff is also informed and believes, and thereon alleges, that such positions were filled by other less qualified people who were Caucasian, not disabled, non-Muslim, non-Egyptian-American, had not complained about safety issues, had not tried to stop Defendants false governmental certifications, representations, and promises, and had not tried to stand up for their right to a timely, good faith, interactive process, had not tried to stand up for their right to a reasonable accommodation, had not tried to stand up for their right not to be harassed, discriminated against, and/or retaliated against.

p. No one at Defendant PERNIX GROUP – who knew about ATEF's complaints of safety issues and ATEF's disabling injuries caused by PERNIX GROUP's illegal actions and omissions - asked about ATEF's restrictions and/or how they could help him find an accommodation. ATEF was lied to again and again - and told that there was nothing open within the company for him to do and no open

positions. Sometimes, as time passed by, ATEF discovered one or more open positions which would lead him to discover that he was being lied to. ATEF sometimes personally saw or heard about positions being advertised within the company that ATEF could do even with his physical restrictions. Plaintiff watched as time went by and much later learned that position after position, for which ATEF was qualified, were filled by others that were less qualified and/or were not minorities and/or were not Muslim.

q. The illegal misconduct against ATEF as summarized herein also was a substantial factor in ATEF losing his security clearance – at least for a period of time. It should be noted, however, that though some of the open jobs required a security clearance, many did not. In addition, ATEF later received his security clearance again.

r. During 2017 through the present in 2018, ATEF sent many emails to many within top management at various companies who were either part of his employer (as part of joint ventures and other joint entities) or prospective employers, with such including people within the position of "President," "CEO," "Vice President," "Director," and other management positions and people within Human Resources, including people within top positions, including "Director" and lower level positions. Of note, ATEF's requests for positions with these employers/prospective employers were often supported by certain top management persons with written and oral glowing reviews of his abilities, work ethic, job performance, and character. Plaintiff is informed and believes, and thereon alleges, many, if not all, of the people contacted for specific positions were subject to hearing defamatory communications or communications meant by Defendant PERNIX GROUP to black-ball ATEF from his profession.

22.     Plaintiff ATEF'S education and decades of employment experience and abilities made it easy - or should have "but for" the illegal motivations of Defendants – to find him a position in the Illinois corporate office, the North Carolina corporate office, other offices around the United States and projects around the world; ATEF made it clear that he was willing to go anywhere.  ATEF was qualified based on his education and prior experience for at least the following jobs which became open from January 2017, and after when ATEF sought to return to work and which ATEF could have performed within his restrictions: Project Manager position-Field position, Planning and Scheduling Analyst-Desk Job, Senior Civil Estimator-Desk job, Quality Control Manager Director of Construction and Operations, Project Executive, Project Coordinator, Site Civil Engineer, Design Engineer, Alt Quality Control Manager, Projects Manager as well as no doubt many other jobs for which ATEF is presently unaware but will learn about during discovery in this case.  ATEF is informed and believes, and on that basis alleges, that the above-listed jobs were given to non-disabled and non-Muslim people who were less experienced and had less expertise and ability than ATEF in light of the following education, certifications, skills, employment experience, and abilities.

23.     Plaintiff ATEF had worked around the United States and around the world, received numerous praises of his work and, not long before his injury, had even received a promotion.  Defendants had many open positions all over the United States and the world that ATEF was qualified for, but was filled by people with less qualifications who were not disabled and/or had not complained about safety issues and/or who were Caucasian and/or who were not Muslim and/or who were younger than ATEF.  It is clear from the foregoing that Defendant PERNIX GROUP's refusal to find a position for ATEF was not a result of his qualifications and/or job performance (ATEF's qualifications and performance were stellar) and/or location of the positions (ATEF was willing to work all over the world), but rather was based upon the improper and illegal motives of Defendant PERNIX GROUP set forth throughout this Complaint.

24.     Plaintiff is informed and believes, and thereon alleges, that the "Board of Directors" is similarly non-diverse with its Board made up of mostly non-Disabled, non-

Muslims – though one gentleman is Middle-Eastern and may be a Muslim.  If so, he should be part of the solution to stop Defendant PERNIX GROUP's discriminatory practices against ATEF and other Muslims, including discrimination in hiring, promotion, and firing.

25.     Plaintiff is informed and believes there are approximately 400 Million Muslim-Americans in the Chicago area and yet Plaintiff is unaware of any Muslims working in Defendant PERNIX GROUP's Illinois Corporate Office.   If there are Muslims working at Defendant PERNIX GROUP in the Illinois Corporate Office, it is a scant few.   President McSWEENEY's recommendation and President/CEO ZAYED's agreement that Defendant PERNIX GROUP should stop hiring and start firing – where possible – Muslim employees (for the stated reason that such was necessary in order to be competitive in the US Government bidding process) has been implemented and effective as it concerns the exclusion of Muslims. In addition, McSWEENEY's rants from the top regarding Middle-Easterners in general (again seeming to lump them in with terrorists) has also led to a thinning of the ranks as far as Middle-Easterners working at Defendant PERNIX GROUP, especially the corporate office in Illinois and North Carolina. Plaintiff is informed and believes and thereon alleges that even though Defendant PERNIX GROUP builds projects all over the world, including projects in predominantly Muslim countries, Defendant PERNIX GROUP has harassed, discriminated against and/or retaliated against Muslim employees and have discriminated against Muslim applicants for employment (even those employees and/or applicants for employment in predominantly Muslim countries).

26.     Plaintiff is informed and believes, and thereon alleges, that as a result of the illegal, malicious, fraudulent, and oppressive acts and omissions by Defendant PERNIX GROUP, INC. that Plaintiff is entitled to damages, including, but not limited to, the following:

      a.  Damages, emotional distress, loss of earnings, liquidated damages (for bad faith violation of the FMLA), attorney attorney's fees, costs of litigation, injunctive relief, and other damages and remedies as allowed under:

          i.  Family Medical Leave Act (sometimes "FMLA"), 29 USC § 2601 et seq.;

    ii.   Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. § 12132;

    iii.   Title VII of the Civil Rights Act of 1964 (sometimes " Title VII"), 42 U.S.C. § 2000e et seq.;

    iv.   42 U.S.C. § 1981 (sometimes ''1981 action"); and

    v.   The False Claims Act (sometimes " FCA"), 31 U.S.C. § 3729 et seq., specifically the anti-retaliation provision found at Section 3730(h).

b.   Damages under federal and state claims for severe, excruciating and traumatic emotional distress and physical manifestations of the emotional distress, headaches, exacerbation of those injuries and symptoms, shaking, gastrointestinal issues, humiliation, crying, grief, nervousness, anger, feeling trapped, questioning life, frustration, frightening questions that plagued and plague his mind (how am I going to provide for my wife and children? Are we going to lose our home? How are we going to pay our bills? and other similar questions), vision problems/loss of vision which required surgical intervention, sleep apnea, irregular heartbeat, high blood pressure, anxiety, insomnia, lethargy, severe depression, feelings of hopelessness, inability, trepidation and/or fear of facing the harassers, dizziness, nausea, disorientation, trouble concentrating, sorrow, worry, low self-esteem, feeling like nobody cares, nightmares about work (including nightmares about one of the harassers), fear that he may see one or more of the harassers somewhere again, weight gain, the stigma and worry about being threatened with termination, and related emotional and mental anguish and physical manifestations all in an amount to be determined by the jury at the trial of this matter;

c.   Damages for past loss of earnings, bonuses and benefits, in spite of continuing attempts at mitigating damages, with such damages increasing each day, plus interest in an amount to be determined by the jury at the trial of this matter;

d. Damages for loss of earning capacity related to the vision problems/loss of vision which required surgical intervention and the medical bills related to the required surgery;

e. Damages under federal and state claims for future loss of earnings, bonuses and benefits, in spite of continuing attempts at mitigating damages, in an amount to be determined by the jury at the trial of this matter;

f. Damages under federal and state claims for consequential financial losses and additional emotional distress damages, increasing with each day, including, but not limited to, the inability to timely pay bills resulting in fees and penalties for failure to pay timely, harassing communications from bill collectors, and other consequential losses all of which have put extreme pressure on his life, family, and other treasured relationships, inflaming anxiety and arguments and causing further severe emotional distress in an amount to be determined by the jury at the trial of this matter;

g. Damages and other remedies under the United States False Claims Act (31 U.S. Code § 3729 et. Seq.) and the California False Claims Act (Government Code, Section 12653(a)), including, but not limited to, the following under similar language: "all relief necessary" as set forth herein to make ATEF "whole," including, but not limited reinstatement with the same seniority status Plaintiff had "but for" Defendants' illegal misconduct against Plaintiff, two times the amount of back pay, interest on the back pay, compensation for the other special damages described herein, attorney's fees and costs, and punitive damages, including treble punitive damages, which are appropriate. Under Government Code, Section 12655(a) and (c), "the provisions of this article are not exclusive, and the remedies provided for in this article shall be in addition to any other remedies provided for in any other law or available under common law" and "this article shall be liberally construed and applied to promote the public interest."

h. Damages, pursuant to the Federal Claims listed above and below and Government Code, Section 12965(b) and California Code of Civil Procedure, Section 1021.5, for the costs of hiring an attorney to pursue recovery for defendants' multiple violations of law as set forth in this complaint and for the litigation costs and expert witness fees attendant to prosecuting this lawsuit regarding the multiple violations of the Fair Employment & Housing Act (Government Code, Section 12940, et seq) in an amount to be determined by the court upon a finding by the jury, in the special verdict, of at least one violation by defendants of the Fair Employment & Housing Act;

i. Damages, pursuant to the Federal Claims listed above and below and Government Code, Section 12653(b) and California Code of Civil Procedure, Section 1021.5, for the costs of hiring an attorney to pursue recovery for defendants' multiple violations of law as set forth in this complaint and for the litigation costs attendant in prosecuting this lawsuit regarding the multiple violations of the whistle-blower harassment, discrimination, and retaliation part of the United States False Claims Act (31 U.S. Code § 3729 et. Seq.) and California False Claims Act (Government Code, Section 12653 et seq);

j. Damages pursuant to Labor Code, Section 1102.5;

k. Damages pursuant to Labor Code, Section 6310(b), plaintiff is entitled to: "Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for

lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor."

l. Mandatory and prohibitory injunctions requiring defendants and each of them to stop the continuing illegal violations of the federal and state laws set forth above and below;

m. Plaintiff is informed and believes, and thereon alleges, that as to these unlawful, unfair and fraudulent business practices, the remedies at law are inadequate. Plaintiff is informed and believes, and thereon alleges, that the above unlawful, unfair and fraudulent business practices are of a continuing nature and are practices engaged in by Defendants, and each of them.  As such, on behalf of the general public, Plaintiff respectfully requests that an injunction against Defendants, and each of them, be issued to enjoin them from continuing to engage in each and every of the unfair, unlawful and fraudulent conduct alleged above.

n. Plaintiff further alleges that Defendant PERNIX GROUP, and DOES 1-100, and each of them, have been unjustly enriched through their use of the unfair, illegal and fraudulent business practices, in an amount to be determined at trial.  On behalf of the general public, Plaintiff respectfully requests that the court order any other further equitable relief deemed necessary by the court, including, without limitation, an order or judgment restoring to every person any interest in money or property which may have been acquired by Defendants through the unfair practices alleged, and/or for restitution or relief requiring Defendants to disgorge the profits illegally and unfairly earned by Defendants as a result of such unfair business practices.

o. Additionally, pursuant to California Code of Civil Procedure, Section 1021.5, Plaintiff seeks an award of attorneys' fees upon prevailing on the Unfair Business Practices cause of action and/or any other cause of action which has resulted in the enforcement of an important right affecting the public interest and: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

p. For the Fraud Counts (False Promise, Concealment and Intentional Misrepresentation):

    i. Plaintiff was defrauded out of a position and is entitled to that out of pocket loss plus interest;

    ii. Plaintiff did not receive the benefits of his bargain which included return to a position in January 2017 or thereafter as other ones became available;

    iii. Plaintiff suffered consequential financial losses as a result of being defrauded, including loss of earnings associated with the false promises, intentional misrepresentations, and concealment and financial fall out of such in an amount to be determined by the jury at the trial of this matter;

    iv. As a result of Defendant's false promises, intentional misrepresentations, and concealment regarding finding ATEF a position, returning him to work and his employment status, Defendant should be estopped from asserting that ATEF was not employed and/or should be estopped from asserting any time defense to any of the claims set forth herein.

    v. Plaintiff suffered severe and excruciating emotional distress as described above in more detail in an amount to be determined by the jury at the trial of this matter;

vi. Plaintiff is entitled to equitable relief in the form of a TRO, preliminary injunction and/or permanent injunction (both mandatory and/or prohibitory) to stop the unfair, illegal and fraudulent practices and conduct of Defendant PERNIX GROUP, INC. and DOES 1-100, and each of them, as set forth herein and to restore Plaintiff to the position out of which he was defrauded; and

vii. Plaintiff, pursuant to California Code of Civil Procedure, Section 1021.5, is entitled an award of attorneys' fees upon prevailing on this cause of action in light of the public nature of this fraudulent scam and numerous others who need to be protected.

q. The wrongful conduct of Defendants, and each of them, described above was intended by Defendants, and each of them, to cause injury to Plaintiff and was despicable, mean, and vile conduct carried on by Defendants, and each of them, with a willful and conscious disregard of the rights of Plaintiff, subjecting him to cruel and unjust hardship, and was an intentional misrepresentation and concealment of material facts known to Defendants with the intent to deprive Plaintiff of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression and/or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish Defendants or to make an example of Defendants to prevent such conduct by others.

r. Plaintiff is informed and believes, and thereon alleges, that one or more of the following factors have been met thereby establishing the liability of Defendants, and each of them, for treble punitive damages pursuant to California Civil Code, Section 3345:

i. Defendants, and each of them, "knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons;"

ii. Defendants, and DOES 1-100, and each of them, "caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person;" and/or

iii. Plaintiff and other victims of the fraudulent conduct were "senior citizens or disabled persons" who were "substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct."

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

27. Plaintiff has exhausted his state and federal administrative remedies by timely filing an administrative complaint (and amended complaints) with the Equal Opportunity Commission (EEOC) and the Department of Fair Employment & Housing ("DFEH") and receiving a Right to Sue letter from the EEOC within 90 days of filing this lawsuit and receiving a Right to Sue letter from the DFEH within one year of the filing of this lawsuit.

**FIRST COUNT**
**VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**
**(FMLA) 29 USC § 2601 ET. SEQ**
**[AGAINST DEFENDANT PERNIX GROUP, INC., and DOES 1-100]**

28. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

29. At all relevant times, Defendant PERNIX GROUP and DOES 1-100 were "employers," dual employers, joint venturers, and/or other entities for which joint and/or several

liability attaches under this cause of action.

30. Defendant PERNIX GROUP and DOES 1-100, upon learning that ATEF had suffered a serious health condition, knew or should have known that they had to meet certain requirements under Family Medical Leave Act (sometimes "FMLA"), 29 USC § 2611 et seq.:

a. Defendants PERNIX GROUP and DOES 1-100, and each of them, were required to post a notice regarding FMLA rights and include certain mandatory provisions it in its employee handbook; Defendant PERNIX GROUP's employee handbook, as set forth above, actually contained completely inaccurate, illegal, and fraudulent provisions;

b. Defendants PERNIX GROUP and DOES 1-100, and each of them, were required to timely (within five business days of when the employer acquires knowledge that an employee leave may be for an FMLA-qualifying event) send ATEF a letter specifically designating his leave as qualifying under the FMLA and notifying him of his rights under the law including, but not limited to, the length of the leave allowed under these laws (12 weeks) and a promise that his position would be kept open for 12 weeks.

c. Defendants PERNIX GROUP and DOES 1-100, and each of them, knew that they could not in any way interfere with ATEF's taking of the leave and/or harass, discriminate against and/or retaliate against him in any way for requesting a leave, taking the leave or for asserting his rights under the law.

31. In spite of its knowledge of the requirements of the law, Defendant PERNIX GROUP and DOES 1-100, and each of them, consciously disregarded the rights of ATEF and violated the Family Medical Leave Act by numerous acts, including but not limited to those set forth above and summarized here:

a. Knowingly, wrongfully, and fraudulently misrepresenting and concealing in their written policies (see above)  and in oral conversation ATEF's rights and the rights of numerous other employees under the FMLA; as set forth above, Defendant PERNIX GROUP's employee handbook contains completely inaccurate, illegal,

and fraudulent provisions indicating that the FMLA is "inapplicable" to Defendant PERNIX GROUP, INC. and misrepresenting Defendant PERNIX GROUP's obligations and the rights of ATEF and many other employees.

b. Knowingly and wrongfully harassing ATEF, interfering with ATEF's leave, discriminating against ATEF, and retaliating against ATEF as a result of his requesting and taking of a family medical leave (related to his serious health condition), his objection to the illegal practices and treatment, and for standing up for his right to not be subject to such unlawful conduct; and

c. Knowingly and wrongfully terminating ATEF's employment (de facto) and refusing to hire/rehire him, in violation of the FMLA, which required PERNIX GROUP to bring him back to the same or similar position and was otherwise illegal since these illegal acts were for requesting and/or taking his family medical leavesrequesting other family medical leave, in furtherance of the unlawful interference, discrimination, harassment and retaliation under the FMLA, for objecting to the illegal conduct, and standing up for his rights under the FMLA and his right not to be subject to such unlawful conduct;

32.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

a. Damages sufficient to compensate Plaintiff for his injuries;

b. Past loss of earnings, benefits, and interest;

c. Future loss of earnings, benefits, and interest;

d. Pre-judgment and post-judgment interest;

e. Reasonable attorney's fees;

f. Costs of this action;

g. Injunctive relief;

h. All damages and remedies allowed under the FMLA;

i. Emotional Distress Damages; and

j. Any and all other damages and relief that this Honorable Court may deem just and equitable.

**SECOND COUNT**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")**
**42 U.S.C. 12101 ET. SEQ.**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]**

33. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

34. Under the ADA, the term " disability" means that an individual has: (1) a physical or mental impairment that substantially limits one or more " major life activities"; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Further, the ADA defines " major life activities" as including, but not limited to: " caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). As set forth more fully above, Plaintiff, at all relevant times, was "disabled" and/or regarded as disabled" under the ADA as his injury caused a "substantial limitation" on a "major life activity;" namely walking.

35. The ADA defines a " qualified individual" as " an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The United States Equal Employment Opportunity Commission (" EEOC") regulations provide that the essential functions are the " fundamental job duties" of a position, rather than the position's " marginal functions," and that courts should examine several factors to determine essential functions. [1] 29 C.F.R. § 1630.2(n)(1)-(3). As set forth more fully above, Plaintiff was qualified to do his job and many other jobs (including the essential functions of those jobs) at Defendant PERNIX GROUP, INC with or without a reasonable accommodation. When ATEF initially asked to be returned to work

by Defendant PERNIX, Plaintiff ATEF could have returned to a desk job in numerous and various engineering and related positions that were open and given to less qualified non-disabled individuals. ATEF was later allowed by his physicians to not only perform a desk job, but was also allowed by his physicians to travel as part of his job and, Defendant PERNIX GROUP gave away additional numerous and varied positions to less qualified, non-disabled individuals.

36. As set forth more fully above, within two months of Plaintiff ATEF's disabling injury, and within hours of ATEF's attempt to return to work (certainly temporal proximity) and continuing through the end of 2017, Defendant PERNIX GROUP refused to provide a timely, good faith, interactive process, refused to provide a reasonable accommodation, and harassed him, discriminated against him, retaliated against him, refused to find and give him open positions, lied to him about the lack of open positions and their purported attempts to find such, wrongfully discharged him, and refused to rehire him all "on the basis of" (under the "but for" test) of Plaintiff ATEF's disability, perceived disability, ATEF's standing up for his rights concerning his disability, and ATEF's opposing Defendant PERNIX GROUP's illegal acts and omissions concerning ATEF's disability. Plaintiff ATEF's allegation that Defendant PERNIX GROUP'S illegal actions and omissions were on the basis of ("but for") his disability/perceived disability is not only based upon the close temporal proximity, but also the numerous factual circumstances and context of Defendant PERNIX GROUP's illegal acts and omissions.

37. As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

    a. Damages sufficient to compensate Plaintiff for his injuries;

    b. Past loss of earnings, benefits, and interest;

    c. Future loss of earnings, benefits, and interest;

    d. Pre-judgment and post-judgment interest;

    e. Reasonable attorney's fees;

  f. Costs of this action;

  g. Injunctive relief;

  h. All damages and remedies allowed under the ADA;

  i. Punitive damages and treble punitive damages;

  j. Emotional Distress Damages; and

  k. Any and all other damages and relief that this Honorable Court may deem just and equitable.

### THIRD COUNT
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
("TITLE VII") 42 U.S.C. § 2000e ET. SEQ.);
[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]**

  38. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

  39. Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. 2000e-2(a)(1)(2) prohibits the following acts or omissions by employers such as Defendant PERNIX GROUP, INC. who employ fifteen or more employees:

  a. "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

  b. "(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

  40. Under the case law, Title VII's prohibited actions by employers (relevant to this case) have been clarified and/or expanded to include, but not be limited to, the following:

  a. Harassment ("Hostile Environment") Claim: "To state a hostile work

environment claim based on national origin, a plaintiff must allege that: (1) he " was subject to unwelcome harassment" ; (2) " the harassment was based on [his] national origin" ; (3) " the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment" ; and (4) " there is basis for employer liability." In determining whether a workplace is objectively hostile, we consider the totality of the circumstances, including: " the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [T]he specific circumstances of the working environment and the relationship between the harassing party and the harassed" also " bear on whether that line is crossed."

b. Discrimination ("Disparate Treatment") Claim: To establish a Title VII disparate treatment claim, a plaintiff must allege that an employer took job-related action against him which was motivated by intentional discrimination. An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." Such actions include: (1) diminishing an " employee's compensation, fringe benefits, or other financial terms of employment," including termination; (2) reducing long-term career prospects " by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted" ; and (3) changing " the conditions in which [an employee] works ... in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment."

c. Retaliation Claim: To state a claim for retaliation under Title VII, a plaintiff must allege that he " engaged in statutorily protected activity" and suffered an adverse action[39] " as a result of that activity." Title VII also prohibits discriminating against an employee " because [she] has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e--3(a). The range of conduct prohibited under [Title VII's] anti-retaliation provision is broader than its anti-discrimination provision."   In the context of a retaliation claim, " 'the discriminatory acts proscribed by Title VII ... are not limited to those that affect the terms and conditions of one's employment.'"

41.   The Seventh Circuit has found that the facts necessarily will vary in Title VII cases, and the "... prima facie proof required from [employees] is not necessarily applicable in every respect to differing factual situations." Title VII plaintiffs need only initially " create an inference that an employment decision was based on [an illegal] discriminatory criterion." "All evidence belongs in a single pile and must be evaluated as a "whole" rather than separated artificially between direct and indirect methods of proof. As such, " [t]he expression 'prime facie case' in Title VII litigation popularly refers to a common, but not exclusive, method of establishing a triable issue of intentional discrimination."

42.   As set forth more fully above, Defendant PERNIX GROUP illegally harassed (in a severe and pervasive way so as to "so as to alter the conditions of employment and create a hostile or abusive working environment") discriminated against, and retaliated against ATEF based upon his national origin, race, color, ancestry, religion, standing up for his rights, and opposing illegal actions/omissions against him and others  through numerous and varied acts and omissions that not only constituted "adverse employment actions" causing Plaintiff millions of dollars in lost earnings (past and future loss of earnings at approximately $200,000 a year), but also caused Plaintiff severe emotional distress and otherwise hurt Plaintiff and his family.  The fact that such illegal actions by Defendant PERNIX GROUP and DOES 1-100 was based on national origin, color, race, ancestry, religion and other protected categories is supported not only by the temporal proximity and the less qualified non-Disabled, non-Muslim, Non-Egyptian-Americans who were given the open positions instead of Plaintiff and the non-Disabled, Non-Muslim, Non-Egyptian-Americans who were promoted instead of Plaintiff, but also because of the harassing, discriminatory, and retaliatory statements made and conduct by Defendant

PERNIX GROUP's top officers, directors, and "managing agents" (showing their harassing, discriminatory, and retaliatory animus) and the other circumstances set forth throughout this Complaint.

43.    As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

      a.  Damages sufficient to compensate Plaintiff for his injuries;

      b.  Past loss of earnings, benefits, and interest;

      c.  Future loss of earnings, benefits, and interest;

      d.  Pre-judgment and post-judgment interest;

      e.  Reasonable attorney's fees;

      f.  Costs of this action;

      g.  Injunctive relief;

      h.  All damages and remedies allowed under the Title VII;

      i.  Punitive damages and treble punitive damages;

      j.  Emotional Distress Damages; and

      k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

**FOURTH COUNT**
**VIOLATION OF 42 U.S.C. § 1981 ("1981 CLAIM")**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]**

44.    Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

45.    This claim proceeds under 42 U.S.C. § 1981, part of the Civil Rights Act of 1866, which according to the U.S. Supreme Court and the Seventh Circuit Court of Appeals is to proceed under the same general elements of the preceding Title VII claim. This claim, however,

does not require exhaustion through the EEOC, has a longer statute of limitations, is not subject to the damage caps enforced under Title VII and has other different procedural facets as compared to the Title VII claims.

46. As set forth more fully above, Defendant PERNIX GROUP illegally harassed (in a severe and pervasive way so as to "so as to alter the conditions of employment and create a hostile or abusive working environment") discriminated against, and retaliated against ATEF based upon his national origin, race, color, and ancestry, through numerous and varied acts and omissions that not only constituted "adverse employment actions" causing Plaintiff millions of dollars in lost earnings (past and future loss of earnings at approximately $200,000 a year), but also caused Plaintiff severe emotional distress and otherwise hurt Plaintiff and his family. The fact that such illegal actions by Defendant PERNIX GROUP was based on national origin, color, race, and ancestry is supported not only by the temporal proximity and the less qualified Non-Egyptian-Americans who were given the open positions instead of Plaintiff and the Non-Egyptian-Americans who were promoted instead of Plaintiff, but also because of the harassing, discriminatory, and retaliatory statements made and conduct by Defendant PERNIX GROUP's top officers, directors, and "managing agents" (showing their harassing, discriminatory, and retaliatory animus) and the other circumstances set forth throughout this Complaint.

47. As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

    a. Damages sufficient to compensate Plaintiff for his injuries;

    b. Past loss of earnings, benefits, and interest;

    c. Future loss of earnings, benefits, and interest;

    d. Pre-judgment and post-judgment interest;

    e. Reasonable attorney's fees;

    f. Costs of this action;

g.  Injunctive relief;

h.  All damages and remedies allowed under Section 1981;

i.  Punitive damages and treble punitive damages;

j.  Emotional Distress Damages; and

k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

**FIFTH COUNT**
**WHISTLEBLOWER PROTECTION OF THE FALSE CLAIMS ACT**
**(31 U.S.C. § 3730(h))**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]**

48.  Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

49.  Plaintiff brings this action under the anti-Retaliation provision found at 31 U.S.C. Section 3730(h)(1) which provides as follows: "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." An employee need not have actual knowledge of the FCA for his or her actions to be considered "protected activity" under § 3730(h). If so, only those with sophisticated legal knowledge would be protected by the statute. In the past, courts have said that an employee must show that an FCA action is a "distinct possibility" at the time of the investigation for his actions to be considered "protected activity." This was not meant to contradict the rule that does not require actual knowledge of the FCA, however. It implied instead that there is an objective component to the test for a claim under § 3730(h), as well as a subjective one. The relevant inquiry to determine whether an employee's actions are protected under § 3730(h) is whether: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government."

50.     Plaintiff ATEF knew, from his experience with participating in negotiations with the federal government on behalf of Defendant (and other employers for that matter) that Defendant PERNIX GROUP, INC. expressly and impliedly certified hundreds of times to the U.S. Government (as well as state and local governments) each time it contracted  that it had followed, was following, and would follow anti-discrimination laws, conduct periodic inspections to insure compliance with such, and was and is following safety laws.

51.     In light of the facts set forth above and throughout this Complaint establishing violation of safety laws and anti-discrimination laws, Plaintiff was aware that Defendant PERNIX GROUP, INC.'s express and implied certifications were false and made by Defendant PERNIX GROUP, INC.'s top officers, directors and managing agents, including NIDAL ZAYED and EDWARD McSWEENEY, with the knowledge that such certifications were false in that they themselves and the company had violated, were violating, and would continue to violate the very anti-discrimination laws they certified, that they did not conduct periodic reviews to insure compliance, and that they did not intend to follow such laws the hundreds of times that they certified such, including, but not limited to, the last few years at a minimum, and specifically including with certainty the following dates that they made the false certifications and false claims December 2016 (when ATEF was being promised with the benefits of FMLA); January 9, 2017, January 19, 2017, January 23, 2017, January 26, 2017, February 24, 2017, March 13, 2017, March 17, 2017, March 29, 2017, May 4, 2017, June 5, 2017, July 7, 2017, July 3, 2017, July 20, 2017, July 23, 2017, August 23 2017, September 11, 2017, September 13, 2017, September 26, 2017, September 27, 2017, September 29, 2017, and October 2017, and November 9, 2017 with these false claims only being a small fraction of the whole.  Each time CEO/President ZAYED and/or President McSWEENEY made the numerous express false claims on each date of each new contract or each new claim for money (approximately $700 million over the last 8 years or so), their comments and actions harassing, discriminating against, and retaliating against the disabled, Muslims, and others of other protected categories and specifically their illegal actions against ATEF creeped into their minds as uninvited guests of guilty consciousness as they lied to bring in hundreds of millions.

52.     Plaintiff investigated such false certifications and false claims and tried to stop such with the good faith belief (and the reasonable belief of someone sitting in his shoes) that Defendant PERNIX GROUP's express and implied certifications that they have followed, were following and would follow anti-discrimination laws and would periodically review such compliance were false.  As a result of his investigation of such and his attempts to stop such, Defendant PERNIX GROUP retaliated by refusing to provide a timely, good faith, interactive process, refusing to provide a reasonable accommodation, interfering with his CFRA/FMLA leave, harassing him, discriminating against him, retaliating against him, wrongfully discharging him (de facto) and not hiring/rehiring him, among other retaliatory acts set forth above.

53.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

   a.  Damages sufficient to compensate Plaintiff for his injuries;

   b.  Double past loss of earnings, benefits, and interest;

   c.  Future loss of earnings, benefits, and interest;

   d.  Pre-judgment and post-judgment interest;

   e.  Reasonable attorney's fees;

   f.  Costs of this action;

   g.  Injunctive relief;

   h.  All damages and remedies allowed under the United States False Claims Act;

   i.  Punitive damages and treble punitive damages;

   j.  Emotional Distress Damages; and

   k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

### SIXTH COUNT
### VIOLATION OF THE CALIFORNIA FAMILY RIGHTS ACT
### (CALIFORNIA GOVERNMENT CODE, SECTION 12945.1 ET. SEQ.);
### [against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]

54.     Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

55.     At all relevant times, Defendant PERNIX GROUP and DOES 1-100 were "employers," dual employers, joint venturers, and/or other entities for which joint and/or several liability attaches under this cause of action.

56.     Defendant PERNIX GROUP and DOES 1-100, upon learning that ATEF had suffered a serious health condition, knew or should have known that they had to meet certain requirements under the California Family Rights Act ("CFRA"- California Government Code, Section 12945.2) which had adopted - as a part of state law - various portions of similar federal laws (including the Family Medical Leave Act "FMLA" - 29 USC Section 2601 et seq.):

  a.  Defendants PERNIX GROUP and DOES 1-100, and each of them, were required to post a notice regarding CFRA rights and include certain mandatory provisions it in its employee handbook; as set forth above, Defendant PERNIX GROUP's employee handbook actually contains completely inaccurate, illegal, and fraudulent provisions;

  b.  Defendants PERNIX GROUP and DOES 1-100, and each of them, were required to timely (within ten days at the latest) send ATEF a letter specifically designating his leave as qualifying under the CFRA and notifying him of his rights under these laws including, but not limited to, the length of the leave allowed under these laws (12 weeks) and a promise that his position would be kept open for 12 weeks.   2 Cal.C.Regs. Sections 7297.2(a),(c) and 7297.9(a),(d); California Government Code, Sections 12945.2(a) and 12950(a); 29 CFR Section 825.301(b)(1).

  c.  Defendants PERNIX GROUP and DOES 1-100, and each of them, knew that they could not in any way interfere with ATEF's taking of the leave and/or harass, discriminate against and/or retaliate against him in any way for requesting a leave,

taking the leave or for asserting his rights under the law. 29 CFR Section 825.700(a); California Government Code, Sections 12940(h), 12945.2(a),(l) and 2 Cal.C.Regs. Section 7297.7;

57.     In spite of its knowledge of the requirements of the law, Defendant PERNIX GROUP and DOES 1-100, and each of them, consciously disregarded the rights of ATEF and violated the California Family Rights Act by numerous acts, including but not limited to those set forth above and summarized here:

      a.  Knowingly, wrongfully, and fraudulently misrepresenting and concealing in their written policies (see above)  and in oral conversation ATEF's rights and the rights of numerous other employees under the CFRA; as set forth above, Defendant PERNIX GROUP's employee handbook contains completely inaccurate, illegal, and fraudulent provisions indicating that the CFRA is "inapplicable" to Defendant PERNIX GROUP, INC. and misrepresenting Defendant PERNIX GROUP's obligations and the rights of ATEF and many other employees.

      b.  Knowingly and wrongfully harassing ATEF, interfering with ATEF's leave, discriminating against ATEF, and retaliating against ATEF as a result of his requesting and taking of a family medical leave (related to his serious health condition), his objection to the illegal practices and treatment, and for standing up for his right to not be subject to such unlawful conduct; and

      c.  Knowingly and wrongfully terminating ATEF's employment (de facto) and refusing to hire/rehire him, in violation of the CFRA, which required PERNIX GROUP to bring him back to the same or similar position and was otherwise illegal since these illegal acts were for requesting and/or taking his family medical leaves requesting other family medical leave, in furtherance of the unlawful interference, discrimination, harassment and retaliation under the CFRA, for objecting to the illegal conduct, and standing up for his rights under the CFRA and his right not to be subject to such unlawful conduct;

58.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal

policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

     a.  Damages sufficient to compensate Plaintiff for his injuries;

     b.  Past loss of earnings, benefits, and interest;

     c.  Future loss of earnings, benefits, and interest;

     d.  Pre-judgment and post-judgment interest;

     e.  Reasonable attorney's fees;

     f.  Costs of this action;

     g.  Injunctive relief;

     h.  All damages and remedies allowed under the California Family Rights Act;

     i.  Punitive damages and treble punitive damages;

     j.  Emotional Distress Damages; and

     k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

<u>**SEVENTH COUNT**</u>
**ILLEGAL FAILURE AND REFUSAL TO PROVIDE**
**A TIMELY, GOOD FAITH, INTERACTIVE PROCESS**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]**

59.    Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

60.    Plaintiff is informed and believes, and thereon alleges, that Defendants PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew that it was an "unlawful employment practice" under California Government Code, Section 12940(n), against the law and a disregard for Plaintiff's rights and the rights of others "for an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine

effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

61. Defendants PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew or should have known, that in addition to the mandatory 12-week leave required under the CFRA/FMLA as described herein, and the much longer leave required as a reasonable accommodation under FEHA/ADA, that Plaintiff's right to a timely, good faith interactive process and to have his disability accommodated under California Government Code, Section 12940(m) and (n) were separate and distinct rights and included many potential "reasonable accommodations" of his disability and/or perceived disability.

62. Defendants PERNIX GROUP, and DOES 1-100, and each of them, with malice, oppression, and fraud and in conscious disregard for Plaintiff ATEF's rights under the law, violated the Fair Employment and Housing Act by failing to provide a timely good faith interactive process to find a reasonable accommodation for ATEF's disability and/or perceived disability. In fact, Defendants PERNIX GROUP, and DOES 1-100, and each of them, acted untimely and in bad faith, and refused an interactive process, by refusing to interactively communicate with ATEF about – and disregarding - ATEF'S medical conditions, medical restrictions, and the various alternative possible accommodations that would accommodate his disability including a leave for medical treatment, but most importantly when he was able to return to work a desk job with travel allowed. Instead of acting in good faith and interactively to try to find a reasonable accommodation, Defendant PERNIX GROUP (President/CEO ZAYED, President McSWEENEY, and HR Director WATSON) immediately talked about getting rid of ATEF, did not ask for an updated resume, gave him the cold shoulder, did not offer him any jobs, and, most importantly, lied about and concealed many open positions and lied about their purported attempts to find him a position. Plaintiff ATEF later learned that many outsiders and those inside the company (non-Disabled, non-Muslim, and non-Middle-Easterners) were given

many jobs from January 2017 on that Defendant PERNIX GROUP lied about and concealed and for which ATEF was more or equally qualified for.

63.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

   a.   Damages sufficient to compensate Plaintiff for his injuries;

   b.   Past loss of earnings, benefits, and interest;

   c.   Future loss of earnings, benefits, and interest;

   d.   Pre-judgment and post-judgment interest;

   e.   Reasonable attorney's fees;

   f.   Costs of this action;

   g.   Injunctive relief;

   h.   All damages and remedies allowed under the California Fair Employment and Housing Act;

   i.   Punitive damages and treble punitive damages;

   j.   Emotional Distress Damages; and

   k.   Any and all other damages and relief that this Honorable Court may deem just and equitable.

**EIGHTH COUNT**
**ILLEGAL FAILURE AND REFUSAL TO**
**PROVIDE A REASONABLE ACCOMMODATION**
**[Against DEFENDANTS PERNIX GROUP, and DOES 1-100]**

64.     Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

65.     Plaintiff is informed and believes, and thereon alleges, that Defendants PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against

Plaintiff described herein, knew that it was an "unlawful employment practice" under California Government Code, Section 12940(m), against the law and a disregard of Plaintiff's rights "for an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

66. Plaintiff is informed and believes, and thereon alleges, that Defendants PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew or should have known, that under California Government Code, Section 12926(n), 2 Cal.C.Regs. Section 7293.9 (a) and relevant case law, employers, who are aware of an employee's disability or at least perceive a disability, have an "affirmative duty" to make "reasonable accommodations" for that employee which include, but are not limited to:

      a.  A leave of absence [beyond the limits of time of those required under the California Family Rights Act and/or the Family Medical Leave Act];

      b.  Job restructuring;

      c.  Offering part-time or modified work schedules;

      d.  Preferential consideration in the reassignment of existing employees, [including the transferring or termination of harassers];

      e.  Reassignment to a vacant position;

      f.  Adjusting or modifying policies [including leave policies];

      g.  Other similar accommodations for individuals with disabilities; and

      h.  Transferring a harasser or otherwise stopping the harassment.

67. Defendants PERNIX GROUP, and DOES 1-100, and each of them, with malice, oppression, and fraud and in conscious disregard for Plaintiff ATEF'S rights under the law, violated the California Fair Employment and Housing Act by failing and refusing to provide a reasonable accommodation for ATEF'S disability and/or perceived disability. Instead of acting in good faith and providing a reasonable accommodation as required under state and federal law, Defendant PERNIX GROUP (President/CEO ZAYED, President McSWEENEY, and HR Director WATSON) immediately talked about getting rid of ATEF, did not ask for an updated

resume, gave him the cold shoulder, did not offer him any jobs, and, most importantly, lied about and concealed many open positions and lied about their purported attempts to find him a position. Plaintiff ATEF later learned that many outsiders and those inside the company (non-Disabled, non-Muslim, and non-Middle-Easterners) were given many jobs from January 2017 on that Defendant PERNIX GROUP lied about and concealed and for which ATEF was more or equally qualified for.

68. As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

        a. Damages sufficient to compensate Plaintiff for his injuries;

        b. Past loss of earnings, benefits, and interest;

        c. Future loss of earnings, benefits, and interest;

        d. Pre-judgment and post-judgment interest;

        e. Reasonable attorney's fees;

        f. Costs of this action;

        g. Injunctive relief;

        h. All damages and remedies allowed under the California Fair Employment and Housing Act;

        i. Punitive damages and treble punitive damages;

        j. Emotional Distress Damages; and

        k. Any and all other damages and relief that this Honorable Court may deem just and equitable.

### NINTH COUNT
### ILLEGAL HARASSMENT AND FAILING TO PROTECT FROM SUCH IN VIOLATION OF FEHA
### [against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100]

69. Plaintiff ATEF repeats and re-alleges each and every allegation contained in the

preceding paragraphs, inclusive, and incorporates them by reference as though fully set forth herein.

70.     At all times material hereto, ATEF was an "employee" and/or "applicant" for employment (after his wrongful discharge) and was protected by California Government Code, Section 12940(j)(1), which prohibits harassment in employment on the basis of sex, gender, disability, perceived disability, association (with others based upon race, color, national origin, ancestry, disability, perceived disability, etc.), and other protected categories under California Government Code, Section 12940 et. seq.

71.     At all times material hereto, Defendants PERNIX GROUP, and DOES 1-100, and each of them, were "employers" and/or "persons" within the meaning of California Government Code, Section 12940(j)(1), and, as such, were prohibited from harassing ATEF on the basis of disability, perceived disability, religion, national origin, ancestry, race, color, association (with others based upon race, color, national origin, ancestry, disability, perceived disability, and religion), and other protected categories, set forth in Government Code, Section 12940(a).

72.     Under California Government Code, Section 12940(j), Defendants PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew that:  (1) It was an "unlawful employment practice," against the law and a disregard for Plaintiff's rights "for an employer…or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status," and/or "association" with such protected categories, to harass an employee or "person performing services  pursuant to a contract;" (2) An employer is strictly liable for the unlawful harassment by its supervisor; (3) "Loss of tangible job benefits" was not "necessary in order to establish harassment;" (4) "An employee… is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective

action;" (5) Under the law, just one slur by a "supervisor" unambiguously based upon a protected category may suffice to constitute harassment:   ""Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' ... than the use of an [unambiguous] racial epithet ... by a supervisor in the presence of his subordinates;"  and (6) For purposes of liability under subsection (j) "'Harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth or related medical conditions."

73.     The Fair Employment and Housing Act (California Government Code, Section 12940 et. Seq.) (FEHA) defines "disability" as anyone who has "any limitation" (not the "substantial limitation" required by the ADA) on a "major life activity" which, of course, includes "any limitation" on work.  At different points in his active employment and while off on disability leave as set forth above, Plaintiff ATEF had a "disability" and/or "perceived disability" in that he had a limitation on his ability work.  Unlike the ADA, FEHA does not require any particular duration of time for a limitation on work to last before it will be considered a "disability."

74.     Under California Government Code, Section 12940(j), Defendants Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct described herein, knew or should have known that pursuant to California Government Code, Section 12935(a), the Fair Employment and Housing Commission promulgated regulations to interpret and implement FEHA including a definition of "harassment" which "includes but is not limited to:"

> a.  Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act;
>
> b.  Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act;
>
> c.  Visual forms of harassment, e.g., derogatory posters, cartoons, or drawings

on a basis enumerated in the Act; and/or

d. Sexual favors, e.g., unwanted sexual advances which condition an employment benefit upon an exchange of sexual favors."

75. Under California Government Code, Section 12940(j), Defendants PERNIX GROUP, and DOES 1-100, and each of them, at the time of the harassment, discrimination against, retaliation against, failure to protect from, aiding, abetting, inciting, coercing, and compelling from such, wrongful discharge (de-facto) of, and failure to rehire Plaintiff described herein based upon disability, perceived disability, religion, national origin, ancestry, race, color, association (with others based upon race, color, national origin, ancestry, disability, perceived disability, and religion), and other protected categories, knew or should have known that the law has and had a broad and expansive view of what constitutes disability/perceived disability/religion/racial/color/ancestry/national origin harassment, finding numerous other comments and conduct to fall within the definition, when based upon disability, perceived disability, religion, race, color, national origin, ancestry, association with such, and/or any other protected categories, standing up for a person's rights, and/or opposing illegal conduct and/or comments.

76. In addition, Defendants PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that discriminatory "adverse employment actions" that support a discrimination claim and/or retaliatory conduct may also be used to support a "harassment" claim. Defendants PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that "although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." In addition, Defendants PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that a cognizable "adverse employment action" (for purposes of discrimination and harassment) "… is not limited to adverse employment actions that impose an

economic detriment or inflict a tangible psychological injury upon an employee" and "the phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." Furthermore, Defendants PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that such "adverse actions," included "actions other than discharge," including, but are not limited to, "employer actions such as demotions," "disadvantageous transfers or assignments," "refusals to promote," "unwarranted negative job evaluations," "toleration of harassment by other employees," "coworker hostility or retaliatory harassment…," "an employer's solicitation of negative comments by coworkers," a "suspension," requiring "…an employee ... to 'go through several hoops' in order to obtain … benefits," "transfers of job duties," and "undeserved performance ratings." Plaintiff is informed and believes and thereon alleges that harassing actions and "adverse employment actions," additionally include, but are not limited to, similar conduct and words, including, but not limited to, intentionally refusing to provide a timely, good faith, interactive process, intentionally refusing to provide a reasonable accommodation, and/or knowingly and/or recklessly subjecting an employee to offensive conduct, offensive language, unsafe working conditions, physical injury and/or severe emotional distress.

77. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF described herein, knew (and/or at least should have known) that, under California Government Code, Section 12940(h), it was an "unlawful employment practice," against the law and a disregard for ATEF's rights (and the rights of others), for each and/or all of them, "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

78. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX

GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF described herein, knew (and/or at least should have known) that, under California Government Code, Section 12940(i), it was an "unlawful employment practice," against the law and a disregard for ATEF's rights (and the rights of others), "for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

79. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF (and others), knew (and/or at least should have known) that, under California Government Code, Section 12940(k), that it was an "unlawful employment practice," against the law and a disregard for ATEF's rights (and the rights of others), "for an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

80. Plaintiff is informed and believes, and thereon alleges, that most of those who conducted the illegal harassment, discrimination, and retaliation were Plaintiff's "supervisors" in that CEO/President ZAYED, President McSWEENEY, and HR Director WATSON, in the interest of their employer, Defendant PERNIX GROUP, had the authority and/or discretion to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action…." As such, Defendants PERNIX GROUP and DOES 1-100, and each of them, are strictly liable for the harassing conduct and comments of CEO/President ZAYED, President McSWEENEY, and HR Director WATSON.

81. Defendant PERNIX GROUP, and DOES 1-100, and each of them, with malice, oppression, and fraud and in conscious disregard for Plaintiff ATEF's rights (and the rights of others) under the law, illegally harassed and aided, abetted, incited, coerced, and compelled such illegal action against ATEF (and others) in violation of FEHA by the harassing acts and comments set forth throughout this Complaint based on his disability, perceived disability, religion, national origin, ancestry, color, ancestry, and association (with others based upon race, color, ancestry, national origin, disability, perceived disability, religion, etc.), standing up

for his rights under FEHA, opposing illegal conduct in violation of FEHA, and other protected categories as set forth throughout this complaint:

82. Defendant PERNIX GROUP, and DOES 1-100, and each of them, as set forth above, inspite of the actual and/or constructive knowledge of its' supervisors and agents of the harassment, discrimination, and retaliation, also failed to take immediate and appropriate corrective action to stop the harassment, discrimination, and retaliation.

83. As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

 a. Damages sufficient to compensate Plaintiff for his injuries;

 b. Past loss of earnings, benefits, and interest;

 c. Future loss of earnings, benefits, and interest;

 d. Pre-judgment and post-judgment interest;

 e. Reasonable attorney's fees;

 f. Costs of this action;

 g. Injunctive relief;

 h. All damages and remedies allowed under the California Fair Employment and Housing Act;

 i. Punitive damages and treble punitive damages;

 j. Emotional Distress Damages; and

 k. Any and all other damages and relief that this Honorable Court may deem just and equitable.

**TENTH COUNT**
**ILLEGAL DISCRIMINATION AND FAILING TO PROTECT FROM SUCH IN VIOLATION OF FEHA**
**[against DEFENDANTS PERNIX GROUP, and DOES 1-100]**

84. Plaintiff ATEF repeats and re-alleges each and every allegation contained in

preceding paragraphs, inclusive, and incorporates them by reference as though fully set forth herein.

85. At all relevant times until he was discharged (de-facto), Plaintiff ATEF was an employee and, after Defendants' wrongful discharge of him, an applicant for employment thereby protected by California Government Code, Section 12940(a), which prohibits discrimination in employment on the basis of the protected categories described above and below.

86. At all relevant times, Defendant PERNIX GROUP, and DOES 1-100, and each of them, were "employers" within the meaning of California Government Code, Section 12926, and as such, were prohibited from discriminating against ATEF and others in regard to terms, conditions, or privileges of employment, including all adverse employment actions on the basis of the protected categories described above and below.

87. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew that it was an "unlawful employment practice" under California Government Code section 12940(a), against the law and a disregard for Plaintiff's rights, "for an employer…or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status," and/or "association" with such protected categories, to:

    a.  "… [R]efuse to hire or employ the person or to refuse to select the person for a training program leading to employment;" or

    b.  "… [B]ar or to discharge the person from employment or from a training program leading to employment, or

    c.  "… [D]iscriminate against the person in compensation or in terms, conditions, or privileges of employment."

88.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that "although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." Moreover, Defendant PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that a cognizable "adverse employment action" "… is not limited to adverse employment actions that impose an economic detriment or inflict a tangible psychological injury upon an employee" and "the phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." Furthermore, Defendant PERNIX GROUP, and DOES 1-100, and each of them, knew and/or should have known that such "adverse actions," included "actions other than discharge," including, but are not limited to, "employer actions such as demotions," "disadvantageous transfers or assignments," "refusals to promote," "unwarranted negative job evaluations," "toleration of harassment by other employees," "coworker hostility or retaliatory harassment…," "an employer's solicitation of negative comments by coworkers," a "one-day suspension," requiring "…an employee *** to 'go through several hoops' in order to obtain … benefits," "transfers of job duties," "undeserved performance ratings." Finally, Plaintiff is informed and believes and thereon alleges that harassing actions and "adverse employment actions," additionally include, but are not limited to, similar conduct and words, refusing to provide a timely, good faith, interactive process for an employee's disability, refusing to provide a reasonable accommodation for an employee's disability, forcing an employee to work against his restrictions, knowingly and/or recklessly subjecting an employee to offensive conduct, offensive language, unsafe working conditions, physical injury and/or emotional distress, discharging an employee, and/or refusing to rehire an employee whose employment was terminated wrongfully.

89.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF described herein, knew (and/or at least should have known) that, under California Government Code section 12940(i) it was an "unlawful employment practice," against the law and a disregard for ATEF's rights (and the rights of others) "for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

90.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF described herein, knew (and/or at least should have known) that it was an "unlawful employment practice" under Government Code, Section 12940(h), against the law and a disregard for ATEF's rights (and the rights of others), for each and/or all of them, "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

91.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew that it was an "unlawful employment practice" under California Government Code, Section 12940(k), against the law, and a disregard for Plaintiff's rights "for an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

92.     Defendants PERNIX GROUP, and DOES 1-100, and each of them, discriminated against ATEF by the adverse actions set forth throughout this Complaint based upon his disability, perceived disability, religion, national origin, ancestry, race, color, and association with others from protected categories (including, but not necessarily limited to, race, color, ancestry, national origin, disability, perceived disability, sex, gender, etc.), standing for his rights and the rights of others under FEHA, opposing illegal conduct in violation of FEHA, and other protected categories as set forth throughout this complaint.

93.     Despite the actual and/or constructive knowledge of its' supervisors and agents of the above-mentioned harassment, discrimination, and retaliation, Defendants PERNIX GROUP, and DOES 1-100, and each of them, failed to take immediate and appropriate corrective action to stop the harassment, discrimination, and retaliation.

94.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

a.     Damages sufficient to compensate Plaintiff for his injuries;

b.     Past loss of earnings, benefits, and interest;

c.     Future loss of earnings, benefits, and interest;

d.     Pre-judgment and post-judgment interest;

e.     Reasonable attorney's fees;

f.     Costs of this action;

g.     Injunctive relief;

h.     All damages and remedies allowed under the California Fair Employment and Housing Act;

i.     Punitive damages and treble punitive damages;

j.     Emotional Distress Damages; and

k.     Any and all other damages and relief that this Honorable Court may deem just and equitable.

### ELEVENTH COUNT
### ILLEGAL RETALIATION AND FAILING TO PROTECT FROM SUCH
### [Against DEFENDANTS PERNIX GROUP and DOES 1-100]

95.     Plaintiff ATEF repeats and re-alleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates them by reference as though fully set forth

herein.

96.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF described herein, knew (and/or at least should have known) that it was an "unlawful employment practice" under California Government Code, Section 12940(h), against the law and a disregard for ATEF's rights (and the rights of others), for each and/or all of them, "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

97.     At all relevant times, Plaintiff ATEF was an employee, protected by FEHA (California Government Code sections 12940 et seq), which prohibited retaliation, failing to protect from, and aiding, abetting, inciting, coercing, and compelling such against Plaintiff and others for standing up for their rights and the right of others under FEHA and/or for opposing and/or complaining and/or refusing to participate in illegal actions in violation of FEHA.

98.     For purposes of the causes of action based upon illegal retaliation and/or wrongful termination of employment, the California Supreme Court has made it clear that an employer may be held liable for retaliation where an employee opposes or complains about harassment, discrimination and/or other illegal activity and is subject to further wrongful conduct because of the complaint or opposition.  An employee who complains about "unfairness," "favoritism" or other harassing conduct does not have to articulate the specific legal theory (e.g., sexual harassment, racial discrimination or any other recognized area of unlawful harassment) to lodge a complaint and implicate protection from retaliation.  Moreover, under the law, an employee does not need to use "legal terms or buzzwords" when opposing discrimination to fall within the protection against retaliation since "inartful, subtle, or circumspect remarks nevertheless may be perfectly clear to the employer."  An employee may prevail on the retaliation claim even without proving the underlying violation of law as long as the plaintiff, when objecting, had a good faith belief that the conduct was illegal conduct.  In addition to FEHA and the other laws set forth above, plaintiff suffered further harassment, discrimination and retaliation (including the de facto

termination of his employment) when he opposed conduct that he believed in good faith to constitute illegal conduct.

99.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP and DOES 1-100, and each of them, at the time of the wrongful conduct against ATEF described herein, knew (and/or at least should have known) that, under California Government Code section 12940(i) it was an "unlawful employment practice," against the law and a disregard for ATEF's rights (and the rights of others) "for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

100.    Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, and DOES 1-100, and each of them, at the time of the wrongful conduct against Plaintiff described herein, knew that it was an "unlawful employment practice" under California Government Code, Section 12940(k), against the law, and a disregard for Plaintiff's rights "for an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

101.    Defendants PERNIX GROUP, and DOES 1-100, and each of them, retaliated against ATEF as set forth above and throughout this Complaint based on his disability, perceived disability, religion, race, color, ancestry, national origin, association (with others based upon disability, perceived disability, religion, race, color, ancestry, national origin, etc.), standing for his rights and the rights of others under FEHA, opposing illegal conduct in violation of FEHA, and other protected categories as set forth throughout this complaint.

102.    Despite the actual and/or constructive knowledge of its' supervisors and agents of the above-mentioned harassment, discrimination, and retaliation, Defendants PERNIX GROUP, and DOES 1-100, and each of them, failed to take immediate and appropriate corrective action to stop the harassment, discrimination, and retaliation.

103.    As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has

suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

    a.  Damages sufficient to compensate Plaintiff for his injuries;

    b.  Past loss of earnings, benefits, and interest;

    c.  Future loss of earnings, benefits, and interest;

    d.  Pre-judgment and post-judgment interest;

    e.  Reasonable attorney's fees;

    f.  Costs of this action;

    g.  Injunctive relief;

    h.  All damages and remedies allowed under the California Fair Employment and Housing Act;

    i.  Punitive damages and treble punitive damages;

    j.  Emotional Distress Damages; and

    k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

**TWELFTH COUNT**
**WHISTLEBLOWER PROTECTION**
**UNDER LABOR CODE, SECTION 6310 AND 6400**
**[Against DEFENDANTS PERNIX GROUP, and DOES 1-100]**

104.    Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

105.    Plaintiff was an employee of Defendants PERNIX GROUP and Does 1-100.

106.    Under California Labor Code, Section 6400:

    a.  "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein;"

    b.  "On multiemployer worksites, both construction and nonconstruction, citations may be issued only to the following categories of employers when

the division has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the division:"

    i. "(1) The employer whose employees were exposed to the hazard (the exposing employer)."

    ii. "(2) The employer who actually created the hazard (the creating employer)."

    iii. "(3) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite, which is the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer).

    iv. "(4) The employer who had the responsibility for actually correcting the hazard (the correcting employer)."

    v. "The employers listed in paragraphs (2) to (4), inclusive, of this subdivision may be cited regardless of whether their own employees were exposed to the hazard."

107.     Under California Labor Code, Section 6310:

    a. "No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following:"

        i. "**Made any oral or written complaint** to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, **his or her employer**, or his or her representative."

    b. "Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to ...his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment, or has participated in an employer-

employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

108.     Plaintiff, on his own behalf and on behalf of others, exercised his right and the rights of other employees to workplace health and safety and also made complaints to his employer, Defendant PERNIX GROUP, concerning such health and safety issues as set forth above.

109.     Plaintiff's exercise of his right and the rights of other employees to workplace health and safety and complaints to his employer, Defendant PERNIX GROUP, about health and safety issues were a substantial motivating reason for Defendant PERNIX GROUP's decision to refuse to provide a timely, good faith interactive process, to refuse to provide a reasonable accommodation, and to harass, discriminate against, retaliate against, wrongfully discharge (de facto), and refuse to hire/rehire plaintiff.

110.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

a.   Damages sufficient to compensate Plaintiff for his injuries;

b.   Past loss of earnings, benefits, and interest;

c.   Future loss of earnings, benefits, and interest;

d.   Pre-judgment and post-judgment interest;

e.   Reasonable attorney's fees;

f.   Costs of this action;

g.   Injunctive relief;

h.   All damages and remedies allowed under California Labor Code, Section 6310 and 6400;

i.   Punitive damages and treble punitive damages;

j.     Emotional Distress Damages; and

k.     Any and all other damages and relief that this Honorable Court may deem just and equitable.

**THIRTEENTH COUNT**
**WHISTLEBLOWER PROTECTION**
**UNDER THE CALIFORNIA FALSE CLAIMS ACT**
**[against DEFENDANTS PERNIX GROUP, and DOES 1-100]**

111.     Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

112.     Plaintiff was an employee of Defendant PERNIX GROUP and Does 1-100.

113.     Under California Government Code, Section 12653(a), "any employee" shall be "entitled to all relief necessary to make that employee…whole" if that employee is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of his or her employment because of the lawful acts done by the employee… or associated others in furtherance of an action under this section or other efforts to stop one or more violations…" of the California False Claims Act.

114.     Under California Government Code, Section 12655(a) and (c), "the provisions of this article are not exclusive, and the remedies provided for in this article shall be in addition to any other remedies provided for in any other law or available under common law" and "this article shall be liberally construed and applied to promote the public interest." In addition, California courts have added to emphasize and provide further clarity to this point: "[A]s a statute obviously designed to prevent fraud on the public treasury, [California Government Code] section 12653 plainly should be given the broadest possible construction consistent with that purpose." Furthermore, California courts have provided an expansive definition of what is protected activity under Section 12653: "[T]he Act's retaliation provision applies not only to qui tam actions but to false claims in general. Section 12653 makes it unlawful for an employer to retaliate against an employee who is engaged 'in furthering a false claims action, including

COMPLAINT - 73

investigation for, initiation of, testimony for, or assistance in, an action filed or to be filed under Section 12652.'"

115.     Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP has defrauded various governmental entities out of hundreds of millions of dollars by submitting false and/or fraudulent claims to these governmental entities for payment based upon PERNIX GROUP's express and implied certifications on many occasions by its owners, officers, and/or "managing agents" (including CEO/President ZAYED and President McSWEENEY) to federal, state and/or local governmental entities that Defendant PERNIX GROUP complies, and will comply, with all employment laws and health safety laws, specific employment laws and health and safety laws, and that it has specific procedures ensuring compliance with such laws and contractual provisions regarding such as set forth more fully above. In fact, Defendant PERNIX GROUP and its owners, officers, and managing agents (including CEO/President ZAYED and President McSWEENEY) knowingly violate such laws as set forth throughout this Complaint to the detriment of Plaintiff and many other employees, violating their rights, and making false certifications and false claims to the federal, state, and/or local governments.

116.     Plaintiff stood up against and tried to stop Defendant PERNIX GROUP's false certifications and false claims against governmental entities as it concerned lies emanating from the highest levels of the company concerning compliance with all of the laws set forth above and specific promises and certifications regarding procedures and compliance.   In addition, Plaintiff investigated these false certifications and false governmental claims (investigating the illegal policies, practices, and conduct making the implied and expressed certifications false) by Defendant PERNIX GROUP in furtherance of a potential and/or actual false claim action against Defendant PERNIX GROUP.  Plaintiff investigated, objected to and tried to stop the illegal employment actions and practices and the unsafe practices by the same officers, directors, and managing agents (including CEO/President ZAYED and President McSWEENEY) that damaged ATEF and others and the false certification and false claims based upon lying about compliance with these laws and false certifications.  Even after these

COMPLAINT - 74

continued objections to the illegal conduct, Defendant PERNIX GROUP continued to further harass, discriminate and retaliate against plaintiff, continued to refuse to provide a timely, good faith interactive process, continued to refuse to provide a reasonable accommodation, wrongfully discharged plaintiff (de facto), refused to hire/rehire plaintiff, and other illegal misconduct as described through this Complaint.

117. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP's harassment, discrimination, retaliation, threats, initial and continuing refusal to provide a timely, good faith interactive process, initial and continuing refusal to provide a reasonable accommodation, wrongful discharge, refusal to rehire plaintiff, initial and continued harassment, discrimination, and retaliation and other wrongful conduct were substantially motivated by Plaintiff's investigation, objection to, and attempts to stop one or more of PERNIX GROUP's illegal acts and/or omissions, false certifications, and false claims and plaintiff's acts (and/or the acts of "associated" others) in furtherance of a potential and/or actual action for False Government Claims.

118. Plaintiff's protected conduct was meant to stop the false claims and/or was in furtherance of a false claims action to potentially be brought by Plaintiff (and/or others). In addition, Plaintiff, at a minimum, had a reasonable suspicion that Defendant PERNIX GROUP's conduct constituted false claims and/or possible grounds for a potential false claims action. In addition, whatever has been filed and/or will be filed in the future, it was reasonably possible for Plaintiff's conduct to lead to a false claims action against Defendant PERNIX GROUP. Whether or not a false claims action is actually brought after the filing of this action (or was brought before under seal as required by law) by Plaintiff against Defendant PERNIX GROUP and whether the merit of such an action is determined in that matter, Plaintiff had a genuine and reasonable concern that governmental entities were being defrauded (and Plaintiff and other employees were being damaged) in light of the requirement under California law and federal law that Defendant PERNIX GROUP certify, as contractual requirements, compliance with many laws (including anti-discrimination and safety laws) in every contract entered into with any governmental entity as set forth above.

119.     As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

        a.  Damages sufficient to compensate Plaintiff for his injuries;

        b.  Double past loss of earnings, benefits, and interest;

        c.  Future loss of earnings, benefits, and interest;

        d.  Pre-judgment and post-judgment interest;

        e.  Reasonable attorney's fees;

        f.  Costs of this action;

        g.  Injunctive relief;

        h.  All damages and remedies allowed under the Whistle-Blower Retaliation Protection of the California False Claims Act;

        i.  Punitive damages and treble punitive damages;

        j.  Emotional Distress Damages; and

        k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

### FOURTEENTH COUNT
### WHISTLEBLOWER PROTECTION
### UNDER CALIFORNIA LABOR CODE, SECTION 1102.5
### [Against DEFENDANTS PERNIX GROUP, and DOES 1-100]

120.     Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

121.     Plaintiff is an employee of Defendant PERNIX GROUP and Does 1-100.

122.     Under California Labor Code, Section 1102.5:

        a.  "(a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an

employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

b. "(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

c. "(c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

d. "(d) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

123. Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP and DOES 1-100 believed that Plaintiff had disclosed and/or might disclose to a government agency, law enforcement agency, person with authority over Plaintiff, and/or an employee (with authority to investigate, discover, or correct legal violations and/or noncompliance) concerning violations of all the laws set forth above.

124. Plaintiff, though a lay person, had reasonable cause to believe that Plaintiff's participation in the illegal conduct would violate the following laws and had reasonable cause to believe that his information disclosed a violation of and/or noncompliance with state and/or federal statutes and/or a violation of and/or noncompliance with a local and/or state and/or federal rules and/or regulations, including, but not limited to, the following:

a. Family Medical Leave Act (sometimes "FMLA"), 29 USC § 2601 et seq. (requiring allowance of up to a 12-week leave, guaranteed return to the same or similar position upon completion of the leave, no interference with the leave, and prohibiting harassment, discrimination, and/or retaliation based upon requesting, taking, and/or being entitled to such a leave);

b. Title I of the Americans with Disabilities Act (sometimes "ADA")(42 U.S.C. §§ 12101 et seq.) and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.) (requiring a timely, good faith, interactive process to find and to provide a reasonable and ongoing accommodation and prohibiting illegal harassment, discrimination, and/or retaliation based upon disability and/or perceived disability (being "regarded" as disabled);

c. Title VII of the Civil Rights Act of 1964 (sometimes " Title VII"), 42 U.S.C. § 2000e et seq. (prohibiting, as set forth above, illegal harassment, discrimination, and/or retaliation)

d. 42 U.S.C. § 1981 (prohibiting, as set forth above, illegal harassment, discrimination, and/or retaliation);

e. United States False Claims Act (31 U.S. Code § 3729 et. Seq.) (prohibiting harassment, discrimination, and retaliation for investigating and/or trying to

stop false governmental claims and/or otherwise in furtherance of an actual or potential False Claims action);

f.  The Fair Employment and Housing Act (California Government Code, Section 12940 et. Seq.)(requiring a timely, good faith, interactive process and reasonable accommodation to disabled employees and/or applicants for employment and prohibiting illegal harassment, discrimination, and retaliation, based upon the protected categories set forth above;

g.  California Family Rights Act ("CFRA"- California Government Code, Section 12945.2)(requiring notice of certain rights to be posted and included in correspondence, allowance of up to a 12-week leave, guaranteed return to the same or similar position upon completion of the leave, no interference with the leave, and prohibiting harassment, discrimination, and/or retaliation based upon requesting, taking, and/or being entitled to such a leave);

h.  California False Claims Act (California Government Code, Section 12650 et. Seq.) (prohibiting harassment, discrimination, and retaliation for investigating and/or trying to stop false governmental claims and/or otherwise in furtherance of an actual or potential False Claims action);

i.  California Labor Code, Section 6310 and 6400 (prohibiting harassment, discrimination, and retaliation against those who oppose unsafe and unhealthy work environments); and

j.  Other similar laws.

125.  Plaintiff's standing up for his rights under the above laws and his opposition to the illegal policies and practices (or those policies and practices in which he in good faith believed to be illegal) under the above referenced laws was a contributing factor in Defendant PERNIX GROUPS's and DOES 1-100's decision to refuse to provide a timely, good faith interactive process, to refuse to provide a reasonable accommodation, and to harass, discriminate against, retaliate against, wrongfully discharge (de facto), refuse to hire/rehire Plaintiff, and the other illegal conduct set forth herein.

126.    As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

      a.  Damages sufficient to compensate Plaintiff for his injuries;

      b.  Past loss of earnings, benefits, and interest;

      c.  Future loss of earnings, benefits, and interest;

      d.  Pre-judgment and post-judgment interest;

      e.  Reasonable attorney's fees;

      f.  Costs of this action;

      g.  Injunctive relief;

      h.  All damages and remedies allowed under California Labor Code, Section 6310 and 6400;

      i.  Punitive damages and treble punitive damages;

      j.  Emotional Distress Damages; and

      k.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

**FIFTEENTH COUNT**
**WRONGFUL ADVERSE EMPLOYMENT ACTION**
**IN VIOLATION OF PUBLIC POLICY**
**[Against DEFENDANTS PERNIX GROUP, and DOES 1-100]**

127.    Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

128.    California has consistently recognized several fundamental and long-standing public policies as embodied in the following statutes:

      a.  Family Medical Leave Act (sometimes "FMLA"), 29 USC § 2601 et seq. (requiring allowance of up to a 12-week leave, guaranteed return to the same or similar position upon completion of the leave, no interference with the

leave, and prohibiting harassment, discrimination, and/or retaliation based upon requesting, taking, and/or being entitled to such a leave);

b. Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. §§ 12101 et seq. and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.) (requiring a timely, good faith, interactive process to find and to provide a reasonable and ongoing accommodation and prohibiting illegal harassment, discrimination, and/or retaliation based upon disability and/or perceived disability (being "regarded" as disabled);

c. Title VII of the Civil Rights Act of 1964 (sometimes " Title VII"), 42 U.S.C. § 2000e et seq. (prohibiting, as set forth above, illegal harassment, discrimination, and/or retaliation)

d. 42 U.S.C. § 1981 (sometimes "1981")(prohibiting, as set forth above, illegal harassment, discrimination, and/or retaliation);

e. United States False Claims Act (31 U.S. Code § 3729 et. Seq.) (prohibiting harassment, discrimination, and retaliation for investigating and/or trying to stop false governmental claims and/or otherwise in furtherance of an actual or potential False Claims action);

f. The Fair Employment and Housing Act (California Government Code, Section 12940 et. seq.)(requiring a timely, good faith, interactive process and reasonable accommodation to disabled employees and/or applicants for employment and prohibiting illegal harassment, discrimination, and retaliation, based upon the protected categories set forth above;

g. California Family Rights Act ("CFRA"- California Government Code, Section 12945.2)(requiring allowance of up to a 12-week leave, guaranteed return to the same or similar position upon completion of the leave, no interference with the leave, and prohibiting harassment, discrimination, and/or retaliation based upon requesting, taking, and/or being entitled to such a leave);

h.  California False Claims Act (California Government Code, Section 12650 et. Seq.) (prohibiting harassment, discrimination, and retaliation for investigating and/or trying to stop false governmental claims and/or otherwise in furtherance of an actual or potential False Claims action);

i.  California Labor Code, Section 6310 and 6400 (prohibiting harassment, discrimination, and retaliation against those who oppose unsafe and unhealthy work environments); and

j.  Other similar laws.

129.  Plaintiff's standing up for his rights under the above laws and his opposition to the illegal policies and practices (or those policies and practices in which he in good faith believed to be illegal) under the above referenced laws was a contributing factor in Defendant PERNIX GROUPS's and DOES 1-100's decision to refuse to provide a timely, good faith interactive process, to refuse to provide a reasonable accommodation, and to harass, discriminate against, retaliate against, wrongfully discharge (de facto), refuse to hire/rehire Plaintiff, and the other illegal conduct set forth herein.

130.  As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

a.  Damages sufficient to compensate Plaintiff for his injuries;

b.  Past loss of earnings, benefits, and interest;

c.  Future loss of earnings, benefits, and interest;

d.  Pre-judgment and post-judgment interest;

e.  Costs of this action;

f.  Injunctive relief;

g.  All damages and remedies allowed under this cause of action;

h.  Punitive damages and treble punitive damages;

i.  Emotional Distress Damages; and

j.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

**SIXTEENTH COUNT**
**FRAUD (FALSE PROMISE)**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100)**

131.    Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

132.    Plaintiff is informed and believes, and thereon alleges, that Defendant PERNIX GROUP, INC, NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, made the following written and/or oral promises to plaintiff:

a.  On multiple times in December 2016 Defendant PERNIX GROUP promised that once Plaintiff was done with his leave (which was on or about January 5, 2017) he would be returned back to his same position or a similar one;

b.  On multiple times throughout 2017 Defendant PERNIX GROUP (through CANDACE WATSON, NIDAL ZAYED, and ED McSWEENEY) promised that Defendant PERNIX GROUP would try to find ATEF a position at Defendant PERNIX GROUP to return to WORK;

c.  On multiple times throughout 2017 Defendant PERNIX GROUP (through CANDACE WATSON and NIDAL ZAYED) promised that Defendant PERNIX GROUP would inform ATEF of all open positions at PERNIX GROUP for which he may be qualified whenever and wherever in the world they may come up;

d.  On multiple times throughout 2017 Defendant PERNIX GROUP (through CANDACE WATSON and NIDAL ZAYED) promised that ATEF would

continue to be employed at PERNIX GROUP while they continued to look for a position for ATEF.

133. The promises of Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, were important to the transaction between defendant PERNIX GROUP, INC. and plaintiff.

134. Plaintiff is informed and believes, and thereon alleges, that even if one or more of the important promises by defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them,  may potentially be considered to be an expression of an opinion, even these promises are actionable because:  (1)  Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, claimed to have special knowledge of the subject matter of these promises that plaintiff ATEF did not have;  (2)  Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, made these promises, not as casual expressions of belief, but in a way that declared these matters to be true; (3) Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, had a relationship of trust and confidence with plaintiff; (4) Among other duties, Defendants PERNIX GROUP, INC. and DOES 1-100, and each of them, had a duty to return Plaintiff to the same position after his FMLA/CFRA leave, provide a timely, good faith,

interactive process, provide a reasonable and continuing accommodation, a duty not to harass, discriminate against and/or retaliate against Plaintiff because of his disability, requesting and/or taking a FMLA/CFRA leave, and other protected actions/categories, and a common law duty not to defraud Plaintiff ATEF; (5) Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, had other special reasons to expect that plaintiff would rely on these promises whether considered statements of fact or opinion.

135. The promises of Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, were important in that they influenced plaintiff's judgment and conduct and would influence a reasonable person in such a way. In addition, at the time Defendants made the representations they knew that plaintiff ATEF was likely to be influenced by the representations even if a reasonable person would not be influenced.

136. In addition to Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, making the important promises directly to plaintiff both orally and in writing, Defendants also made some of the promises to other defendants and other persons intending or reasonably expecting that these promises would be repeated to plaintiff ATEF.

137. Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, did not intend to keep these promises at the time they made them as shown by the facts set forth above summarized here:

a. When Plaintiff ATEF returned from his leave on January 5, 2017, Defendant PERNIX GROUP, INC. did not give back ATEF his job or a similar job;

b. Although Plaintiff learned later that Defendant PERNIX GROUP had tens of open positions (including many ATEF was qualified for and would have accepted) from January 5, 2017 to the present, Defendant PERNIX GROUP never offered Plaintiff ATEF a position;

c. Although Plaintiff learned later that Defendant PERNIX GROUP, INC. had tens of open positions (including many ATEF was qualified for and would have accepted and were instead given to less qualified non-disabled, non-Muslim, non-Middle-Easterners) from January 5, 2017, Defendant PERNIX GROUP, INC. (who had promised ATEF and had an independent duty to tell him about those jobs) did not tell him about all but one or two positions that were open and, in any event, did not offer him those positions either;

d. Although Defendant PERNIX GROUP, INC. promised to find ATEF a position and promised to keep him employed, it did not find him a position and slowly, but surely, took away benefits of employment until it finally asked for an exit interview document signed at the end of October 2017.

138. Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, intended that plaintiff rely on these promises.

139. Plaintiff's reliance on the promises of defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, was reasonable in light of his relative experience and knowledge regarding the subject matter of the promises.

140. Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of

PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, did not perform the promised acts.

141. Plaintiff's reliance on the promises of defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, was a substantial factor in causing harm to plaintiff in that he was substantially influenced by the promises and probably would pushed the issue as to each open position that was hidden from him, would not have suffered the financial losses attributable to Defendant PERNIX GROUP's lies, would have pursued many other prospective employers sooner, and would have pursued this action against Defendant PERNIX GROUP, INC. sooner.

142. As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

        a.   Damages sufficient to compensate Plaintiff for his injuries;

        b.   Past loss of earnings, benefits, and interest;

        c.   Future loss of earnings, benefits, and interest;

        d.   Pre-judgment and post-judgment interest;

        e.   Costs of this action;

        f.   Injunctive relief;

        g.   All damages and remedies allowed under this cause of action;

        h.   Punitive damages and treble punitive damages;

        i.   Emotional Distress Damages; and

        j.   Any and all other damages and relief that this Honorable Court may deem just and equitable.

**SEVENTEENTH COUNT**
**FRAUD (INTENTIONAL MISREPRESENTATION)**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100)**

143.   Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

144.   Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, represented to plaintiff - both orally and in writing - that the following important facts were true:

a.   On multiple times in December 2016 Defendant PERNIX GROUP represented that once Plaintiff was done with his leave (which was on or about January 5, 2017) he would be returned back to his same position or a similar one;

b.   On multiple times throughout 2017 Defendant PERNIX GROUP (through CANDACE WATSON and NIDAL ZAYED) represented that Defendant PERNIX GROUP was trying to find ATEF a position at Defendant PERNIX GROUP to return to work;

c.   On multiple times throughout 2017 Defendant PERNIX GROUP (through CANDACE WATSON and NIDAL ZAYED) represented that Defendant PERNIX GROUP would inform ATEF of all open positions at PERNIX GROUP for which he may be qualified whenever and wherever in the world they may come up;

d.   On multiple times throughout 2017 Defendant PERNIX GROUP represented that there were no open positions;

e.   On multiple times throughout 2017, Defendant PERNIX GROUP (through CANDACE WATSON and NIDAL ZAYED) represented that ATEF was

employed with and would continue to be employed at PERNIX GROUP while they continued to look for a position for ATEF.

145. Plaintiffs are informed and believe and thereon allege that even if one or more of the important factual representations by defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, may potentially be considered to be an expression of an opinion, even these representations are actionable because: (1) Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GRO UP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, claimed to have special knowledge of the subject matter of these promises that plaintiff did not have; (2) Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, made these promises, not as casual expressions of belief, but in a way that declared these matters to be true; (3) Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, had a relationship of trust and confidence with plaintiff; (4) Defendants PERNIX GROUP, INC. and DOES 1-100, and each of them, had a duty to provide a timely, good faith, interactive process a duty to provide a reasonable accommodation, a duty not to harass, discriminate against and/or retaliate against Plaintiff, and a common law duty not to defraud Plaintiff; (5) Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX

GROUP), and DOES 1-100, and each of them, had other special reasons to expect that plaintiff would rely on these promises whether considered statements of fact or opinion.

146.    The factual representations of Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, were important in that they influenced plaintiff's judgment and conduct and would influence a reasonable person in such a way.  In addition, at the time Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, made the representations they knew that plaintiff was likely to be influenced by the representations even if a reasonable person would not be influenced.

147.    In addition to Defendants PERNIX GROUP, INC.,  NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP) and DOES 1-100, and each of them, making the important factual representations directly to plaintiff both orally and in writing, Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, also made some of the representations to other defendants and other persons intending or reasonably expecting that these representations would be repeated to Plaintiff.

148.    The representations of Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, were false for many reasons, including, but not limited to the following:

a. When Plaintiff ATEF returned from his leave on January 5, 2017, Defendant PERNIX GROUP, INC. did not give back ATEF his job or a similar job;

b. Although Plaintiff learned later that Defendant PERNIX GROUP had many open positions (including many ATEF was qualified for and would have accepted) from January 5, 2017 to the present, Defendant PERNIX GROUP never offered Plaintiff ATEF a position;

c. Although Plaintiff learned later that Defendant PERNIX GROUP, INC. had many open positions (including many ATEF was qualified for and would have accepted and were instead given to less qualified non-disabled, non-Muslim, non-Middle-Easterners) from January 5, 2017, Defendant PERNIX GROUP, INC. (who had promised ATEF and had an independent duty to tell him about those jobs) did not tell him about all but one or two positions that were open and, in any event, did not offer him those positions either;

d. Although Defendant PERNIX GROUP, INC. promised to find ATEF a position and promised to keep him employed, it did not find him a position and slowly, but surely, took away benefits of employment until it finally asked for an exit interview document signed at the end of October 2017.

e. Although Defendant PERNIX GROUP, INC. represented that there were no open positions, Plaintiff later found out that there were many open positions of which Plaintiff was not informed.

149.    Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, knew that the representations were false when made and/or defendants made the representations recklessly and without regard for the truth.

150.    Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX

GROUP), and DOES 1-100, and each of them, intended that plaintiff rely on the representations.

151. Plaintiff's reliance on the representations of Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, was reasonable in light of his relative experience and knowledge regarding the subject matter of the representations.

152. Plaintiff's reasonable reliance was a substantial factor in causing harm to plaintiff in that he was substantially influenced by the misrepresentations and would not have paid the money for the corporate investment without such misrepresentations.

153. As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

      a.  Damages sufficient to compensate Plaintiff for his injuries;

      b.  Past loss of earnings, benefits, and interest;

      c.  Future loss of earnings, benefits, and interest;

      d.  Pre-judgment and post-judgment interest;

      e.  Costs of this action;

      f.  Injunctive relief;

      g.  All damages and remedies allowed under this cause of action;

      h.  Punitive damages and treble punitive damages;

      i.  Emotional Distress Damages; and

      j.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

**EIGHTEENTH COUNT**
**FRAUD (CONCEALMENT)**
**[against DEFENDANTS PERNIX GROUP, INC. and DOES 1-100)**

154. Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

155. Defendants PERNIX GROUP, INC. NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, owed various duties to ATEF as an employee (and/or prospective employee) concerning his employment, including, but not limited to, a duty to return Plaintiff to the same position after his FMLA/CFRA leave, provide a timely, good faith, interactive process, provide a reasonable and continuing accommodation, and a duty not to harass, discriminate against and/or retaliate against Plaintiff because of his disability, requesting and/or taking a FMLA/CFRA leave, and other protected actions/categories.

156. Plaintiff is informed and believes, and thereon alleges, that Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them: (1) Intentionally failed to disclose the following important facts; and/or (2) Disclosed some facts, but failed to disclose the following important facts making the disclosure deceptive; and/or (3) Actively concealed and/or prevented plaintiff from discovering important facts.

157. Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, concealed and/or failed to disclose numerous facts, including, but not limited, the following:

     a.    In spite of promising in December 2016 to return Plaintiff ATEF to his position or similar position upon his return from FMLA/CFRA, Defendant PERNIX GROUP, INC. concealed and actively lied about the fact that it had no intention of doing such upon the end of his FMLA/CFRA leave;

     b.    In spite of promising upon his attempt to return to work on and after January 5, 2017 that it was trying to find him a position, Defendant PERNIX GROUP, INC. concealed and actively lied about the fact that it had no intention of doing such and was not actually doing such;

     c.    Defendant PERNIX GROUP, INC. concealed and actively lied about the fact that there were tens of open positions from January 5, 2018 to the present that Plaintiff ATEF was qualified for;

     d.    Defendant PERNIX GROUP, INC. concealed and actively lied about their intent to keep ATEF employed while it acted like it was trying to find ATEF a position (which it was not);

158.    Plaintiff did not know the concealed facts at the time they were withheld from him.

159.    Defendants PERNIX GROUP, INC., NIDAL ZAYED (CEO/President of PERNIX GROUP), ED McSWEENEY (President of PERNIX FEDERAL, a division of PERNIX GROUP), CANDACE WATSON (Director of Human Resources of PERNIX GROUP), and DOES 1-100, and each of them, intended to deceive plaintiff by concealing these facts.

160.    Plaintiff reasonable relied on the deception of defendants PERNIX GROUP, INC. and DOES 1-100, and each of them.

161.    The concealment by Defendants PERNIX GROUP, INC. and DOES 1-100, and each of them, was a substantial factor in causing plaintiff's harm.

162.    As a result of the malicious, oppressive, fraudulent, despicable, and illegal policies, practices, acts and omissions (set forth throughout this Complaint and including, but not limited to, this Count) by the Defendants listed in this Count, and each of them, Plaintiff has

suffered, and continues to suffer, general and special damages for which he seeks the following damages and remedies as set forth more fully in Paragraph 26 above:

    a.  Damages sufficient to compensate Plaintiff for his injuries;

    b.  Past loss of earnings, benefits, and interest;

    c.  Future loss of earnings, benefits, and interest;

    d.  Pre-judgment and post-judgment interest;

    e.  Costs of this action;

    f.  Injunctive relief;

    g.  All damages and remedies allowed under this cause of action;

    h.  Punitive damages and treble punitive damages;

    i.  Emotional Distress Damages; and

    j.  Any and all other damages and relief that this Honorable Court may deem just and equitable.

## NINETEENTH COUNT
## ILLEGAL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES
### [against DEFENDANTS PERNIX GROUP, and DOES 1-100]

163.    Plaintiff ATEF repeats and realleges each and every allegation contained in preceding paragraphs, inclusive, and incorporates the same herein by reference as though fully set forth herein.

164.    California Business and Professions Code, Section 17200 precludes a person or entity from engaging in unfair competition, defined broadly as business practices which are unlawful, unfair or fraudulent. The language of California Business and Professions Code Section 17200 is to be broadly construed in order to determine whether conduct constitutes an unfair, unlawful or fraudulent business practice.

165.    In addition to suing on behalf of himself, Plaintiff has standing to sue in the name of the People of the State of California under *Business and Professions Code, Section* 17204 since she has suffered an "injury in fact" and "lost money or property as a result of the unfair competition." In addition, under California Code of Civil Procedure, Section 382 the

"question is one of a common or general interest, of many persons" and/or the "parties are numerous, and it is impracticable to bring them all before the court."

166.    California Business and Professions Code, Section 17203 empowers the Court in an action based on allegations of unfair business practices to issue injunctive, restitutionary or other equitable relief.

167.    California Business and Professions Code, Section 17204 permits individuals, such as plaintiff, to institute an action on behalf of the general public to obtain the injunctive and restitutionary relief against the persons and/or entities which engage in unfair business practices.

168.    Defendants PERNIX GROUP, and DOES 1-100, and each of them, are believed to have been engaged in, and continue to engage in, the following unfair, unlawful and fraudulent business policies, practices, and conduct:

    a.    As set forth more specifically above, knowingly and wrongfully making misrepresentations in its written employment policies (including the Employee Handbook, Supplemental Handbook, and other documents) regarding the purported inapplicability of the FMLA to its employees and the rights of its employees and the commensurate duties under the state and federal laws referenced above and below;

    b.    As set forth more specifically above, knowingly and wrongfully violating, as a business practice and/or employment practice, the Family Medical Leave Act (sometimes "FMLA"), 29 USC § 2601 et seq.; and the California Family Rights Act ("CFRA"- Government Code, Section 12945.2)(requiring notice of certain rights to be posted and included in correspondence, allowance of up to a 12-week leave, guaranteed return to the same or similar position upon completion of the leave, no interference with the leave, and prohibiting harassment, discrimination, and/or retaliation based upon requesting, taking, and/or being entitled to such a leave);

c. As set forth more specifically above, knowingly and wrongfully failing, as a business practice and/or employment practice, to enter into a timely, good faith interactive processes with Plaintiff (and others) at a time when Defendants knew that Plaintiff (and others) were disabled or were perceived by them to be "disabled" in violation of the Fair Employment and Housing Act (Government Code, Section 12940 et seq), Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. §§ 12101 et seq.; and the ADA and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.);

d. As set forth more specifically above, knowingly and wrongfully failing, as a business practice and/or employment practice, to provide a reasonable accommodations to Plaintiff (and others) at a time when Defendants knew that Plaintiff (and others) were disabled or were perceived by them to be "disabled" in violation of the Fair Employment and Housing Act (Government Code, Section 12940 et seq), Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. §§ 12101 et seq.; and the ADA and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.);

e. As set forth more specifically above, knowingly and wrongfully harassing, discriminating against, retaliating against, failing to prevent, and aiding, abetting, inciting, coercing, compelling such, as a business practice and/or employment practice, Plaintiff and others based upon disability (actual and/or perceived), and/or association with such in violation of the Fair Employment and Housing Act (Government Code, Section 12940 et seq), Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. §§ 12101 et seq.; and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.);

f. As set forth more specifically above, knowingly and wrongfully harassing, discriminating against, retaliating against, failing to prevent, and aiding, abetting, inciting, coercing, compelling such, as a business practice and/or

employment practice, Plaintiff and others based upon religion, race, color, national origin, ancestry, and/or association with such in violation of the Fair Employment and Housing Act (Government Code, Section 12940 et seq), Title VII of the Civil Rights Act of 1964 (sometimes " Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 (sometimes "1981 action");

g.  As set forth more specifically above, knowingly and wrongfully harassing, discriminating against, retaliating against, failing to prevent, and aiding, abetting, inciting, coercing, compelling such, as a business practice and/or employment practice, Plaintiff and others based upon opposition to, refusal to participate in, complaints about, investigation into, and attempts to stop illegal violations of the Fair Employment and Housing Act (Government Code, Section 12940 et seq), Title I of the Americans with Disabilities Act (sometimes "ADA"), 42 U.S.C. §§ 12101 et seq.; and the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.); Title VII of the Civil Rights Act of 1964 (sometimes " Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 (sometimes "1981 action")

h.  As set forth more fully above, knowingly and wrongfully harassing, failing to prevent, and aiding, abetting, inciting, coercing, compelling such, as a business practice and/or employment practice, Plaintiff and others based upon opposition to, refusal to participate in, complaints about, investigation into, and attempts to stop unsafe and unhealthy policies, practices and conduct in violation of California Labor Code, Sections 6310 and 6400;

i.  As set forth more fully above, knowingly and wrongfully harassing, failing to prevent, and aiding, abetting, inciting, coercing, compelling such, as a business practice and/or employment practice, Plaintiff and others based upon opposition to, refusal to participate in, complaints about,

investigation into, and attempts to stop unsafe practices under California Labor Code, Section 1102.5;

j.   As set forth more fully above, knowingly and wrongfully, as a business practice and/or employment practice, failing to follow FEHA, ADA, the Rehabilitation Act, Title VII, Section 1981, FMLA, and CFRA, and any rules and regulations that implement it;

k.   As set forth more fully above, knowingly and wrongfully, as a business practice and/or employment practice, failing to submit and follow a legally proper non-discrimination program as required by state and federal law;

l.   As set forth more fully above, knowingly and wrongfully, as a business practice and/or employment practice, failing to submit periodic reports of its compliance with that program as required by state and federal law and, if Defendants did such, the reports were and are untrue in light of the written policies and practices and the numerous violations set forth above.

m.   As set forth more fully above, knowingly and wrongfully, as a business practice and/or employment practice, failing to follow the non-discrimination clause in governmental contracts under state and federal law and the requirement that they give written notice of their obligations under that clause to labor organizations with which they have a collective bargaining or other agreement.

n.   As set forth more fully above, knowingly and wrongfully, as a business practice and/or employment practice, failing to have and honestly follow a nondiscrimination program required in governmental contracts and under state and federal law, including a set of specific and result-oriented procedures to which a contractor or subcontractor commits itself for the purpose of insuring equal employment opportunity for all employees or applicants for employment.

169.    Plaintiff is informed and believes and thereon alleges that as to these unlawful, unfair and fraudulent business practices, the remedies at law are inadequate.  Plaintiff is informed and believe and thereon alleges that the above unlawful, unfair and fraudulent business practices are of a continuing nature and are practices engaged in by Defendants PERNIX GROUP, and DOES 1-100, and each of them.

170.    On behalf of the general public, plaintiff respectfully requests that an injunction against Defendants PERNIX GROUP, and DOES 1-100, and each of them, be issued to enjoin them from continuing to engage in each and every of the unfair, unlawful and fraudulent conduct alleged above.

171.    Plaintiff further alleges that Defendants PERNIX GROUP, and DOES 1-100, and each of them, have been unjustly enriched through their use of the unfair, illegal and fraudulent business practices, in an amount to be determined at trial.

172.    On behalf of the general public, Plaintiff respectfully requests that the court order any other further equitable relief deemed necessary by the court, including, without limitation, an order or judgment restoring to every person any interest in money or property which may have been acquired by defendants through the unfair practices alleged, and/or for restitution or relief requiring defendants to disgorge the profits illegally and unfairly earned by defendants as a result of such unfair business practices.

173.    Additionally, pursuant to California Code of Civil Procedure, Section 1021.5, plaintiffs seek an award of attorneys' fees upon prevailing on this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants PERNIX GROUP, INC. and DOES 1-100, and each of them, as follows:

1.    Compensatory and special damages as set forth throughout the complaint according to proof with prejudgment interest thereon to the extent allowable by law;

2.      Damages for pain and suffering, severe emotional distress, physical manifestations of the pain and emotional distress and other general and special damages detailed above that ATEF suffered as a result of Defendants' illegal misconduct;

3.      Damages (including double where appropriate) for past loss of earnings, bonuses and benefits, in spite of continuing attempts at mitigating damages, with such damages increasing each day, plus interest in an amount to be determined by the jury at the trial of this matter;

4.      Damages for future loss of earnings, bonuses and benefits, in spite of continuing attempts at mitigating damages, in an amount to be determined by the jury at the trial of this matter;

5.      Damages for consequential financial losses, medical bills and other costs associated with the emotional injuries and physical manifestations of such caused by Defendants illegal misconduct, and additional financial loss and emotional distress damages, increasing with each day, as described above in an amount to be determined by the jury at the trial of this matter;

6.      Damages pursuant to Government Code, Section 12965(b) and California Code of Civil Procedure, Section 1021.5, for litigation costs, expert costs and attorney's fees incurred in pursuing recovery for defendants' multiple violations of FEHA, CFRA, California False Claims Act, FMLA, ADA, TITLE VII, Section 1981, United States False Claims Act and other laws providing for such recovery.

7.      Damages constituting "all relief necessary" as set forth herein to make him "whole," including, but not limited reinstatement with the same seniority status plaintiff had but for Defendant PERNIX GROUP's illegal misconduct against plaintiff, two times the amount of back pay, interest on the back pay, compensation for the other special damages described herein, attorney's fees

and costs, and punitive damages, including treble punitive damages, which are appropriate.

8. Damages, pursuant to Government Code, Section 12653(b) and California Code of Civil Procedure, Section 1021.5, for the costs of hiring an attorney to pursue recovery for defendants' multiple violations of law as set forth in this complaint and for the litigation costs attendant in prosecuting this lawsuit regarding the failure to provide a timely, good faith, interactive process, failure to provide a reasonable accommodation, and the harassment, discrimination, and retaliation;

9. Restitution;

10. Disgorgement of Profits;

11. "All relief necessary" as set forth herein to make Plaintiff "whole," including, but not limited reinstatement with the same seniority status plaintiff had but for Defendants' illegal misconduct against plaintiff, two times the amount of back pay, interest on the back pay, compensation for the other special damages described herein, attorney's fees and costs, and punitive damages, including treble punitive damages, which are appropriate;

12. Equitable estoppel;

13. Exemplary and punitive damages according to proof;

14. Treble exemplary and punitive damages according to proof;

15. Prejudgment interest as allowed by law;

16. A temporary, preliminary and permanent injunction enjoining Defendants' unfair, illegal and fraudulent practices as described above in violation of the laws and the public policies set forth herein;

17. For costs of suit; and

18. For such other and further relief as the court may deem proper.

Dated: October __17__, 2018        **PEDERSEN LAW**
**A PROFESSIONAL CORPORATION**

**JOHN C. McCARTY, APLC**

**Law Offices of Albert F. Ferolie, P.C.**

By: _Albert Ferolie_
Neil Pedersen
John C. McCarty
Kimberly H. Whang
Albert F. Ferolie

Attorneys for Plaintiff ATEF ELZEFTAWY

## **DEMAND FOR JURY TRIAL**

Plaintiff, ATEF A. ELZEFTAWY hereby respectfully demands a trial by jury for all so triable issues in the above–titled action.

Dated: October __17__, 2018        **PEDERSEN LAW**
**A PROFESSIONAL CORPORATION**

**JOHN C. McCARTY, APLC**

**Law Offices of Albert F. Ferolie, P.C.**

By: _Albert Ferolie_
Neil Pedersen
John C. McCarty
Kimberly H. Whang
Albert F. Ferolie

Attorneys for Plaintiff ATEF ELZEFTAWY