UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ATEF A. ELZEFTAWY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:18-CV-06971 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PERNIX GROUP, INC., and DOES | ) | |
| 1–100, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

In November 2016, Atef Elzeftawy suffered a serious injury while at work for

his employer, Pernix Group, Inc. R. 53, First Am. Compl. ¶ 14.[1] Elzeftawy returned

home to California to recover. *Id.* ¶ 1(a). Two years later, Elzeftawy filed this lawsuit

against Pernix, alleging wide-ranging violations of federal and California laws. R. 1,

Orig. Compl.[2] Earlier in the case, the Court dismissed certain claims from the original

Complaint, but granted Elzeftawy leave to file an amended complaint. R. 52. Elzef-

tawy did so, alleging violations of the Americans with Disabilities Act (Count 1), Title

VII of the Civil Rights Act (Count 2), 42 U.S.C. § 1981 (Count 3), California's Fair

Employment and Housing Act (Counts 4–7), and California's Unfair Competition Law

(Count 11), as well as common-law tort claims of fraud, intentional misrepresenta-

tion, and concealment (Counts 8–10).

---

[1]Citations to the Record are noted as "R." followed by the docket number.

[2]The Court has federal question jurisdiction over this case under 28 U.S.C. § 1331,
and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

Pernix has filed another motion to dismiss, arguing that the California law claims fail to adequately state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 60, Def. Mot.; R. 61, Def. Br. For the reasons discussed in this opinion, Pernix's motion is granted in part and denied in part. Elzeftawy's claims under the Fair Employment and Housing Act are dismissed, but his claim under the Unfair Business Practices Act survives, at least in part.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Amended Complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), as well as those in Elzeftawy's response brief (to the extent they are consistent with the Complaint), *see Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *see also Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir. 2002) (on a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs") (citing Fed. R. Civ. P. 10(c)).

Atef Elzeftawy is a an Egyptian-American and a Muslim who lives in Orange County, California. First Am. Compl. ¶¶ 5, 12. He is either disabled, or at least perceived to be disabled. *Id.* ¶ 12. He began working for Pernix in 2012. *Id.* Pernix is a construction company headquartered in Illinois. *See id.* ¶ 6. In the summer of 2016, Elzeftawy learned that Pernix planned to reduce the number of its Muslim employees in order to receive more contracts from the U.S. government. *Id.* ¶ 13. Elzeftawy opposed this decision, which was communicated to him by Pernix CEO and President Nidal Zayed and by Ed McSweeney, an executive at a division of Pernix. *Id.*

2

In September 2016, Pernix assigned Elzeftawy to work on a project in South Korea, where he would report directly to McSweeney. First Am. Compl. ¶¶ 13–14; R. 23-4, Contract. Elzeftawy would also continue to work with Zayed. First Am. Compl. ¶ 13. Elzeftawy had recently been promoted—by Zayed—to Senior Director of Engineering and Special Projects. *Id.* ¶ 13. But his assignment in South Korea did not go smoothly. *Id.* At some point during this assignment, McSweeney made racist comments about Muslims and Middle-Easterners, including equating them with terrorists. *Id.* ¶ 13. Elzeftawy opposed and complained about these remarks. *Id.* He also complained about safety problems at his job site. *Id.* ¶ 14. Unfortunately, on November 11, 2016, Elzeftawy suffered severe injuries to his leg, ankle, and foot in a workplace accident caused by the very problems he had reported. *Id.*

After his injury, Elzeftawy returned home to California, where he continued to work for Pernix during his recovery. First Am. Compl. ¶¶ 1(a), 21(f). He also filed an Employer's First Report of Occupation Injury while in California, *id.* ¶ 15, which presumably is some kind of form (whether Pernix-specific or a state-agency form, the pleading does not say). Beyond that, in the First Amended Complaint, Elzeftawy provides much more detail about his work for Pernix between November 2016 and January 2017 than in his original Complaint. *Id.* ¶ 1. He explains that he "reviewed and received weekly 'Sitreps' (reports concerning the ongoing project) in his California home." *Id.* ¶ 1(a)(ii). He also "participated in weekly phone conferences (and individual calls) with top management" of Pernix, including Zayed and McSweeney. *Id.* ¶ 1(a)(iii). During the 2½ months that he worked from home, Elzeftawy sent and

3

received around 40 substantive work emails about the South Korea project, where he had been working before his injury. *Id.* ¶ 1(a)(i). Elzeftawy performed these work tasks even though he was designated as totally disabled from November 11, 2016 through early January 2017. *Id.* ¶ 15. He also received wages during this time, presumably for the work performed in California. *Id.* ¶ 17. In January 2017, Elzeftawy's doctor cleared him to return to work, but with restrictions: he must work a "desk job" and must not travel (though the travel restriction was soon lifted). *Id.* ¶ 18.

When he was cleared for work, Elzeftawy notified Pernix and told the company about the restrictions; he also repeatedly told both Zayed and McSweeney that he wanted to return to work. First Am. Compl. ¶¶ 18, 20. With regard to what work would fit, over the years with Pernix, Elzeftawy had worked a variety of jobs, including so-called "desk jobs." *Id.* ¶ 17. He alleges that Pernix knew about those work experiences and could have assigned him a suitable job in one of the company's offices or projects around the world. *Id.* ¶ 17–18. That did not happen. Instead, Zayed, McSweeney, Human Resources Director Candace Watson, and others at Pernix repeatedly told Elzeftawy that they were trying to find a place for him, when in fact they were not. *Id.* ¶ 21. Elzeftawy claims that Pernix violated federal and California laws, including by misrepresenting the disability leave available to him, *id.* ¶ 21(a), (c); forcing him to work while he was supposed to be on disability leave, *id.* ¶ 21(f); failing to engage in an interactive process to determine a return to work, *id.* ¶ 21(e), (g), (k); failing to accommodate his disability, *id.* ¶ 21(b), (e), (g), and discriminating against him on the basis of his race, national origin, and disability, *id.* ¶ 21(h), (i).

4

Despite his desire to work, availability, and qualifications, Elzeftawy was never assigned to a new project or position at Pernix, and also never received an official termination. *Id.* ¶ 21(q), (r).[3]

None of the Pernix administrators who interacted with Elzeftawy are alleged to have worked in California or visited California during this time. Pernix's principal place of business is in Lombard, Illinois. First Am. Compl. ¶ 2. Elzeftawy alleges that communications were sent to him from Lombard. *Id.* ¶ 9. The exception is Watson, who allegedly communicated with him from Charlotte, North Carolina. *Id.* ¶ 12.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[3]More details about this point are in the Opinion on the previous motion to dismiss. R. 52, Dismissal Opinion at 4–7.

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. California Fair Employment & Housing Act

Elzeftawy alleges four separate violations of California's Fair Employment and Housing Act (FEHA), generally falling into two buckets: one related to reasonable accommodation, and the other to harassment and discrimination. First, on accommodation, FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability …." Cal. Gov't Code § 12940(n). Elzeftawy alleges in Count 4 that Pernix violated this law when the company failed to engage in a good-faith interactive process to return him to suitable work once his doctor cleared him to return. First Am. Compl. ¶¶ 42–45. FEHA further makes it unlawful for an employer to "fail to make reasonable

6

accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m). Count 5 alleges that Pernix failed to make a reasonable accommodation for Elzeftawy in the wake of his accident—a similar but distinct claim from the failure to provide an interactive process. First Am. Compl. ¶¶ 46–49.

Next, FEHA prohibits employers from harassing or discriminating against their employees—and from failing to protect their employees from that misconduct—on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition" and other protected characteristics. Cal. Gov't Code §§ 12940(a) and (j). Count 6 alleges harassment and failure to protect from harassment. First Am. Compl. ¶¶ 50–54. Count 7 alleges discrimination and failure to protect from discrimination. *Id.* ¶¶ 55–61.

Pernix argues once again, as in its first motion to dismiss, that FEHA cannot apply to its conduct because of the presumption against extraterritoriality. As a general matter, "'the statutes of a state have no force beyond its boundaries.'" *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1080 (9th Cir. 2018) (quoting *N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 94 (Cal. 1916)). And as with the federal presumption, California courts "presume the [California] Legislature did not intend a statute to be operative, with respect to occurrences outside the state … unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter, or history." *N. Alaska Salmon Co.*, 162 P. at 94 (cleaned up). In fact, "[t]he presumption against extraterritoriality has a mirror-image relative in

7

the form of a presumption in favor of *intraterritorial* application[,]" meaning "courts ordinarily interpret California statutes to apply to conduct occurring anywhere within California's borders, absent evidence [that] a more limited scope was intended." *Ward v. United Airlines, Inc.*, 466 P.3d 309, 317 (Cal. 2020) (emphasis in original). With regard to FEHA, there is nothing in its text or legislative history to suggest that the California Legislature intended it to apply to conduct committed outside California. *See, e.g., Guillory v. Princess Cruise Lines, Ltd.*, 2007 WL 102851, at *4-5 (Cal. Ct. App. Jan. 17, 2007) (unpublished opinion). So the presumption against extraterritoriality applies to FEHA.

The question, then, is whether Elzeftawy's "proposed application" of FEHA "would cause it to operate, impermissibly, with respect to occurrences outside" California. *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011). When this Court decided Pernix's motion to dismiss the original complaint, the answer to this question was "yes": based on the facts Elzeftawy was then pleading, the principle against extraterritoriality prevented him from asserting California law claims against Pernix. R. 52, Dismissal Opinion at 53–63. The Amended Complaint offers additional allegations about his work's connection to California, which demand a new analysis of whether he can bring claims under FEHA despite the presumption against extraterritoriality.[5] Ultimately, the outcome is the same.

---

[5]Elzeftawy once again tries to make his case using principles from choice-of-law analysis, asking this Court to look at which state has the "most significant relationship" to the case. R. 63, Pl. Resp. at 8–9. But choice-of-law principles apply to common law claims. The

As explained in the prior opinion, "the majority of courts in California and other jurisdictions have found that the extraterritorial application of FEHA is determined by the situs of both employment and the material elements of the cause of action, as opposed to residence of the employee or the employer." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017) (collecting cases). So in order to determine whether the First Amended Complaint here seeks to impermissibly apply FEHA extraterritorially, the Court will consider whether Elzeftawy's allegations adequately connect the place of both his employment *and* the proscribed conduct to California.

### 1. Place of Employment

The California Supreme Court recently explained how to determine a worker's place of employment for purposes of applying a California employment statute. In *Ward*, the state high court announced that "workers are covered if they perform the majority of their work in California; but if they do not perform the majority of their work in any one state, they will be covered if they are based for work purposes in California." *Ward*, 466 P.3d at 321. *Ward* further makes it clear that California need not be the exclusive site of employment. In *Ward*, the California Supreme Court held that the application of Section 226 of the California Labor Code "logically depends on whether the employee's *principal place of work* is in California." *Ward*, 466 P.3d at 320 (emphasis added). Employees who work in California most of the time would be

---

claims now before the Court are statutory claims and must be analyzed under the principles of extraterritoriality.

protected under Section 226, as would employees who do not work principally in any one state, but who have a "definite base of operations in California" and perform at least some work there. *Id.* at 324. *See also Sullivan*, 254 P.3d at 239, 243 (holding that nonresident employees of a California company who worked primarily in their home states, but who also worked in California "for entire days or weeks" at a time, were entitled to Labor Code protections); *id.* at 242–43 (conversely holding that California law would generally "not apply to nonresident employees of out-of-state businesses who enter California temporarily during the course of the workday"). Of course, it is true that "each law must be considered on its own terms," and that *Ward* concerned the California Labor Code, not FEHA. *Ward*, 466 P.3d at 319. Nevertheless, *Ward* (along with *Sullivan*) strongly suggests that FEHA would apply even if an employee does some work out-of-state, so long as the employee's work is substantially connected to California.

In the Amended Complaint, Elzeftawy alleges that he performed substantial work for Pernix, at Pernix's request, from California between November 2016 and January 2017. Taking his allegations as true and interpreting them in the light most favorable to Elzeftawy, as is required at this stage, he has alleged enough facts to be considered employed in California for purposes of his FEHA claims. He alleges that he continued working after his injury, while he was recovering in California, because he was "responding to the needs of the company from the very top who needed [his] assistance." First Am. Compl. ¶ 21(f). Although Elzeftawy does not specifically allege that Pernix knew that he was working in California, it is reasonable to infer that

Pernix did know. Elzeftawy filed his report of injury from California, and he was in frequent contact with Pernix executives throughout his recovery. *Id.* ¶ 1. Knowing that Elzeftawy was in California (and recovering from a severe injury), Pernix nevertheless continued to include him in ongoing project work. It is true that just receiving and sending a few dozen emails might not, alone, suggest ongoing employment activity. *Id.* ¶ 1(a)(i). But Elzeftawy also participated in weekly telephone conferences with two top Pernix executives, Zayed and McSweeney. *Id.* ¶ 1(a)(iii). He also was sent, and reviewed, weekly reports on the project he had been supervising. *Id.* ¶ 1(a)(ii). Again, although not explicitly spelled out in the Amended Complaint, a plausible inference, viewing the facts in the light most favorable to Elzeftawy, is that Elzeftawy was sent these reports so he could participate meaningfully in his weekly meetings with Zayed and McSweeney.

Elzeftawy's FEHA claims are all based, at least in part, on events that took place while he was working in California. Pernix failed to provide him with a timely, good-faith, interactive process to find a reasonable accommodation for his disability while he was living and working in California. First Am. Compl. ¶¶ 42–49 (Counts 4 and 5). Part of Elzeftawy's harassment claim appears to be based on events when he was on site in South Korea. *Id.* ¶ 21(h). But his claim also encompasses harassment that he experienced while recovering and working in California. *Id.* ¶¶ 21(i), (j), 51–54 (Count 6). And Elzeftawy claims he was wrongfully discharged and refused employment after his accident, while he was in California, working for or applying to work for Pernix. *Id.* ¶¶ 55–61 (Count 7).

11

All this is to say that Elzeftawy *did* work for Pernix in California, exclusively, between November 11, 2016, and January 2017. Given the new allegations showing how much work Elzeftawy did in California, for purposes of FEHA he "perform[ed] the majority of [his] work in California." *Ward*, 466 P.3d at 321. His time in South Korea and other locations does not undermine that conclusion, because the work that he performed in those locales is irrelevant to the employment-law claims in this case. *C.f. Sarviss v. Gen. Dynamics Info. Tech.,* 663 F. Supp. 2d 883, 897 (C.D. Cal. 2009) (granting summary judgment to employer on employee's claims under the California Labor Code for unpaid overtime accrued while working outside California, but specifically exempting any claims based on events in California from this holding, even though plaintiff performed most of his work outside California).

Elzeftawy also argues that FEHA should apply to him because he is "based" in California. Pl. Br. at 6. This argument arises from the *Ward* rule that an employee who does not work primarily in any one state can still bring claims based on California law if the employee's "base of operations" is in California. *Ward*, 466 P.3d at 321. But *Ward*'s definition of "base of operations" does not quite encompass Elzeftawy's situation: "[W]e conclude this principle will be satisfied if the worker performs some work here and is based in California, meaning that California serves as the physical location where the worker presents himself or herself to begin work." *Id.* The plaintiffs in *Ward* were pilots and flight attendants, and the state supreme court was fashioning a standard that made sense for interstate transportation workers like them. *Id.* at 311, 320–21. Pilots present themselves for work at airports. As for other

12

interstate transportation workers: a ship's crew presents itself for work at a dock, while a trucker must pick up the truck somewhere. These are employer-provided physical locations. This model does not comfortably stretch to fit Elzeftawy's logging into his work email from his home in California. But it does not matter that he does not fit within the "base of operations" category, because for the time frame at issue, as already explained, Elzeftawy was in fact performing most of his job duties in California.

### 2. Place of Wrongdoing

The next question is whether the material elements of the causes of action brought by Elzeftawy occurred in California. *Russo*, 135 F. Supp. 3d at 1094. "The presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute." *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 968 P.2d 539, 554 n.20 (Cal. 1999) (emphasis in original). Although Elzeftawy has convincingly linked his own work to California (as explained earlier), he has not shown that Pernix's conduct took place in California. This is a problem for Elzeftawy because all of his claims under FEHA target Pernix's actions and inactions.

Elzeftawy again seeks to rely on *Kearney*, a California Supreme Court decision, to support the FEHA claims. Pl. Resp. at 4, 10–11. But Elzeftawy's case is still distinguishable from *Kearney*, even based on the facts in the First Amended Complaint. In *Kearney*, the employer recorded phone calls with the employee while the employee was in California, in violation of California law. *Kearney v. Salomon Smith Barney,*

13

*Inc.*, 137 P.3d 914, 917 (Cal. 2006). The state high court explained that applying California's statute against such recordings "cannot accurately be characterized as an unauthorized *extraterritorial* application of the statute, but more reasonably is viewed as an instance of applying the statute to a multistate event in which a crucial element—the confidential communication by the California resident—occurred *in California*." *Id.* at 931 (emphasis in original). To illustrate its point, *Kearney* provided a dramatic example of a cross-border shooting: "A person who secretly and intentionally records such a conversation from outside the state effectively acts within California in the same way [as] a person … intentionally shooting a person in California from across the California–Nevada border." *Id.* Elzeftawy's situation differs from these examples. Elzeftawy alleges that Pernix made its FEHA-violating decisions and sent its FEHA-violating communications from Illinois and North Carolina. First Am. Compl. ¶¶ 9, 12. These were not "multistate events" that required any conduct or response in California to occur, like recording a California conversation or shooting a person standing on California soil. Pernix's actions were complete when they were taken in Illinois and North Carolina. The *Kearney* rule for multi-state events thus does not apply to Elzeftawy's case.

Elzeftawy focuses most of his argument on how much he suffered from Pernix's actions while he was in California. First Am. Compl. ¶ 1; Pl. Resp. at 6–14. But for purposes of determining where the cause of action against Pernix accrued, it is far less important where Elzeftawy experienced the repercussions of Pernix's actions, than where Pernix *actually took* those actions. The relevant conduct for purposes of

this analysis is the conduct that creates liability. *See* Dismissal Opinion at 61, footnote 19, citing *Sullivan*, 254 P. 3d at 240, 247. All of the relevant conduct took place outside of California.

Elzeftawy also relies on *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850 (1996), but this case ultimately hurts more than it helps him. *Campbell* was about a non-California-resident employed by a California-based company, who experienced wrongdoing on the high seas. *Campbell*, 42 Cal. App. 4th 1852–54. Elzeftawy cites the case for the proposition that "a California resident who suffers injury in California from wrongful acts directed to him in California is exactly the person who is to be protected by California laws." Pl. Resp. at 4. This inverse, partial restatement of *Campbell's* holding misses the importance of *where* the alleged misconduct happened. *Campbell* stated its holding as follows: "We hold that the [FEHA] was not intended to apply to non-residents where, as here, the tortious conduct took place out of this state's territorial boundaries." *Campbell*, 42 Cal. App. 4th at 1852. *Campbell* was just as concerned with the fact that the alleged misconduct took place at sea or in Washington, rather than in California, as with the employee's Washington residency. *Id.* at 1858. Indeed, Campbell's employer was actually headquartered in California, but because none of the decisions related to her allegations were made or ratified in California, *Campbell* deemed the connection to the state too slight to justify applying FEHA. *Id.* Considering the holdings of *Diamond Multimedia, Kearney* and *Ward*, it is clear that a California state court would not now decide, nor would have decided in 1996, that Campbell could bring her claims in California even if she were a California

15

resident. California residency would not have changed the fact that with regard to Campbell's *claims* against her former employer, "[t]he relationship to California is slight." *Id.* Here, too, the relationship of Elzeftawy's claims against Pernix to California is slight.

Finally, it is worth noting that at least one federal court, which recently confronted with FEHA claims similar to Elzeftawy's, focused *exclusively* on the site of wrongdoing, giving little or no weight to the plaintiff's place of employment in determining whether the presumption of extraterritoriality applies. *See English v. Gen. Dynamics Mission Sys.*, 2019 WL 2619658 (C.D. Cal. 2019), *aff'd*, 808 F. App'x 529 (9th Cir. 2020) (unpublished opinion). The plaintiff in *English* had been hired by her employer while she lived in Georgia, later moved to California, and performed most of her work for her employer on three- to six-month assignments around the country. *Id.* at *2. She sometimes worked from home for brief periods in between assignments. *Id.* During one of these brief periods of working from home, she was terminated from her job, allegedly for discriminatory reasons in violation of FEHA. *Id.* at *3. Her bosses called her from Georgia and North Carolina, respectively, to tell her they were letting her go. *Id.* The district court examined *Northern Alaska, Sullivan*, and *Diamond Multimedia Sys.*, as well as several other cases cited by the parties, and concluded that the California Supreme Court's primary concern in questions of extraterritoriality was where the *conduct* that gave rise to liability took place. *Id.* at *5–7. The court declined to consider any other factors as part of its extraterritoriality analysis:

16

> Based on the California Supreme Court's focus on the location of the violative conduct, the Court is not convinced that it may properly consider factors unrelated to the FEHA violations–such as where Plaintiff paid taxes, where she performed 'a significant amount' of work, and where she received her pay–in deciding whether FEHA applies to the alleged acts of discrimination."

*Id.* at \*7. In *English*, even though the employee did some work in California and was in California when she received the news of her termination—much like Elzeftawy—the court focused on where the allegedly wrongful acts were committed. *Id.* This approach, too, would support rejecting the application of FEHA in this case.

Because Elzeftawy cannot sufficiently link Pernix's conduct to California, the FEHA claims must be dismissed.

### B. California Unfair Competition

Count 11 of the First Amended Complaint advances a claim under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code. § 17200 *et seq.* "[T]he UCL prohibits, and provides civil remedies for, unfair competition," which it defines broadly as "any unlawful, unfair or fraudulent business act or practice." *Loeffler v. Target Corp.*, 324 P.3d 50, 75 (Cal. 2014) (cleaned up). "By proscribing any unlawful business act or practice, the UCL borrows rules set out in other laws and makes violations of those rules independently actionable." *Zhang v. Superior Court*, 304 P.3d 163, 167 (Cal. 2013) (cleaned up). But "the law does more than just borrow." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999). "The statutory language … makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Id.* Importantly, though, "[w]hile the scope of conduct covered by the UCL is broad, its remedies are limited." *Korea Supply Co.*

*v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). Specifically, "[a] UCL action is equitable in nature." *Id.* Neither damages nor attorneys' fees can be recovered. *Zhang*, 304 P.3d at 167.

Once again, Pernix raises the presumption against extraterritoriality—which "applies to the UCL in full force[,]" *Sullivan*, 254 P.3d at 198—to argue that the UCL claim must be dismissed. The last time Pernix made this argument, this Court agreed. R. 53 at 72. But reexamining the claim in light of the Amended Complaint leads to the opposite result.

The extraterritoriality rules under the Unfair Competition Law are different from those governing FEHA. This is because, as explained in the prior opinion, the site of the misconduct is not crucial. Some California courts "have held that a UCL claim may be brought by a plaintiff who is a resident of California, regardless of where the alleged misconduct occurred." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015) (citing *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 23 (Cal. Ct. App. 1999), and *Yu v. Signet Bank/Virginia*, 82 Cal. Rptr. 3d 304, 313–14 (Cal. Ct. App. 1999)). On the new facts alleged in the First Amended Complaint, the UCL claim survives the motion to dismiss.

Personal jurisdiction in a California state court is the key test. In *Yu*, the California appellate court rejected the argument that "California cannot regulate conduct that is lawful in other states," and explained that "[i]n the absence of any federal preemption, a defendant *who is subject to jurisdiction in California* and who engages in out-of-state conduct that injures a California resident may be held liable for such

18

conduct in a California court." *Yu*, 82 Cal. Rptr. 2d at 313 (emphasis added) (cleaned up). As explained in the opinion on Pernix's first dismissal motion, *Yu* stands for the proposition that a California-resident plaintiff can bring a UCL claim against an out-of-state defendant when the defendant is subject to personal jurisdiction in California. Dismissal Opinion at 73–74, citing *Yu*, 82 Cal. Rptr. 2d. at 313. As a general matter, personal jurisdiction requires a defendant to have made "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). "[T]he [defendant's] relationship must arise out of contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (cleaned up). The defendant should have "contacts with the forum State itself," not just with "persons who reside there." *Id.* at 285. This has also been described in the contracts context as a "purposeful availment requirement" that "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

In the First Amended Complaint, Elzeftawy alleges that he not only resided in California, but actually worked there, and that Pernix solicited and took advantage of his work while in California. First Am. Compl. ¶¶ 1, 21. The key fact to consider is that Elzeftawy did not just reside in California during the relevant time period—he *worked for Pernix* during that time period. So for a short time, Pernix was

19

purposefully availing itself of an employee located in California, and could expect to be haled into court there. This is very different from the facts of *Walden*. In *Walden*, law enforcement officers had searched the plaintiff-respondents in a Georgia airport, ultimately seizing their cash. *Walden*, 571 U.S. at 280. After this seizure, the plaintiffs flew to their home in Nevada, hired a lawyer, and set about trying to get back their money, including filing suit in federal court in Nevada. *Id.* at 280–81. But the officers had no connection to Nevada, except that the people they had searched had returned there. *Id.* So personal jurisdiction over the officers did not apply in Nevada. In contrast, here Pernix employed (at least based on the current allegations) Elzeftawy while he worked in California, and Pernix knew that he was in California.

On the strength of those new allegations, Elzeftawy cites several cases finding personal jurisdiction over employers for various reasons, one of which is especially helpful to his cause. He first cites *Calder v. Jones*, 465 U.S. 783 (1984), in which the Supreme Court established the "effects" test when it held that Florida-based tabloid journalists could be sued in California court for an article that they published and distributed in California: "California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California." *Calder*, 465 U.S. at 788–89. *Calder* does not provide the strongest support for Elzeftawy, because of its emphasis on California as "the focal point ... of the story": the journalists had written about a California resident, relied on California sources, and distributed allegedly libelous materials in California, all with the aim of besmirching the plaintiff's reputation in

that state. *Id.* Pernix's work with Elzeftawy had nothing to do with California, sub-stantively, in the way that the journalists' work was inherently California-based. So *Calder* remains unpersuasive.

But Elzeftawy also cites *Jillella v. International Solutions Group*, for the prop-osition that an employer who purposefully directs his conduct at California can be brought into court there, and this makes more sense. 507 F. App'x 706 (9th Cir. 2013) (unpublished opinion). In *Jillella*, the employer had sent and assigned Jillella to work in California, and indeed Jillella worked for 800 hours over a five-month period in that state on behalf of his employer. *Id.* at 707. That was enough for personal juris-diction in California state court to apply to the employer for a claim arising out of the employment agreement. *Id.* It is true that Elzeftawy is not alleging that he did that many hours of work for Pernix when in California; nor does he allege that Pernix intentionally sent him to California. But the facts are reasonably close: Pernix knew Elzeftawy was in California, and nevertheless continued to send him work and solicit work from him via emails and conference calls. First Am. Compl. ¶¶ 1, 21. Elzeftawy chose to move to California, but Pernix chose to keep him employed while he was there. This went on not for a few days, or one week, but for 10 weeks. That prolonged, substantive employment of an employee in California is enough for Pernix to subject itself to the jurisdiction of California courts for a claim arising out of the employment. Applying the personal-jurisdiction test of *Yu*, because Pernix is subject to jurisdiction in California, and Pernix's out-of-state actions harmed Elzeftawy, a California

21

resident during that work period, Elzeftawy may bring the UCL claim against Pernix. *Yu*, 82 Cal. Rptr. 2d at 313.[6]

For these reasons, and again bearing in mind that the allegations are accepted as true for now, Elzeftawy's claim under the UCL survives the motion to dismiss.

## IV. Conclusion

The motion to dismiss is granted in part, and denied in part: the claims under FEHA (Counts 4, 5, 6, and 7) are dismissed. This time the dismissal is with prejudice, because Elzeftawy has had a chance to amend with full knowledge of the substantive governing standard. The claim under the UCL (Count 11) survives.

ENTERED:


s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 20, 2021

---

[6]The third case cited by Elzeftawy, *Morrill v. Scott Fin. Corp.,* 873 F. 3d 1136 (9th Cir. 2017), found no jurisdiction on facts distinguishable from Elzeftawy's. *Morrill* addressed a case that originated in Nevada, but involved an ancillary, parallel suit filed in Arizona so as to subpoena Arizona-based witnesses. *Id.* at 1139–40. The other side then sued in Arizona for abuse of process. *Id.* at 1139. The Ninth Circuit concluded that the "alleged tortious conduct was a component part of the litigation in Nevada." *Id.* at 1149. The fact that the witnesses lived in Arizona was not enough for the Arizona court to have jurisdiction over a dispute essentially rooted in Nevada. In contrast, Pernix knowingly and intentionally employed Elzeftawy while he lived in California, and he did work from California.